## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| STARKIE CORNETT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|        v. | )    22-CV-00034-ABJ |
| | ) |
| PARK COUNTY BOARD OF COUNTY | ) |
| COMMISSIONERS and PARK COUNTY | ) |
| ROAD AND BRIDGE DIVISION OF | ) |
| THE PUBLIC WORKS DEPARTMENT, | ) |
| | ) |
|     Defendants. | ) |

## ORDER GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER

This matter is before the Court on Defendants' Motion for Protective Order pursuant to Fed. R. Civ. P. Rule 26(c). [Doc. 45]. This Court finds that the parties met and conferred in a good faith effort to resolve this matter without Court intervention. The Court having carefully consider the Motion, Plaintiff's Response and Defendants' Reply and being fully advised in the matter finds that the Motion for Protective Order prohibiting the depositions of Park County and Prosecuting Attorney Bryan A. Skoric and Deputy County Attorney Jack R. Hatfield should be and is hereby is granted.

## BACKGROUND

The Plaintiff filed her First Amended Complaint on March 4, 2022 [Doc. 3]. Plaintiff's Complaint alleges unlawful pay discrimination because of gender in violation

of Title VII of the Civil Rights Act of 1964 as amended, the Equal Pay Act of 1963, and
the Wyoming Fair Employment Act of 1965, as amended. *Id.* at ¶ 1.

Plaintiff is employed by Park County Road and Bridge. Park County has an equal
opportunity policy that prohibits unlawful discrimination in the workplace, including
wage discrimination. The Park County Personnel Policy provides that complaints of
discrimination shall be directed to the Park County Attorney for investigation.[1] The
policy also provides that the investigation will include interviews of witnesses, the person
alleged to have committed the discrimination and an interview with the person alleging
discriminatory conduct. [Doc. 45, Ex. A].

Plaintiff reported her allegations of wage discrimination to the Park County
Attorney for investigation. The Park County Attorney's Office began an investigation
into Plaintiff's allegations of wage discrimination. After the investigation was initiated,
Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity
Commission (EEOC). By letter dated July 15, 2020, the Park County Attorney responded
to the EEOC concerning Plaintiff's Charge of Discrimination. [Doc. 45, Ex. B]. The letter
notes that the investigation had not been concluded, but also notes that the evidence
demonstrates that Plaintiff had not been subjected to any form of discrimination while
employed with Park County Road & Bridge. Defendants assert that this letter was
provided to Plaintiff even prior to the commencement of this lawsuit. [Doc. 45, at 3].

---

[1] The requirement of investigation by the county attorney is in Section 4.3 "Sexual & Other Unlawful Harassment". It
does not directly reference other forms of discrimination, including pay. [Doc. 45–1, at 6].

The Initial Pretrial Conference took place on August 24, 2023, and an Initial Pretrial Order was entered on August 24, 2023. [Doc. 24]. Defendants assert that Plaintiff has taken nine depositions of both current and former Park County employees and served two sets of written discovery requests upon Defendants. Plaintiff's counsel conducted the latest round of depositions on April 23, 2024, in Cody, Wyoming. [Doc. 45, at 3].

The discovery cutoff deadline was set as May 31, 2024. On or about April 25, 2024, Plaintiff informed Defendants that she wanted to depose Park County Attorney Skoric and Deputy Attorney Hatfield. Apparently neither Skoric nor Hatfield had been disclosed as potential witness under either Plaintiff's, or Defendants' Rule 26 Initial or Supplemental Disclosures. On April 26, 2024, Defendants were served with a Notice of Deposition for both Skoric and Hatfield, setting their depositions for May 20, 2024. [Doc. 45, Ex. C]. On April 30, 2024, Defendants were served with a Subpoena Duces Tecum for Skoric and Hatfield demanding them to "make available for inspection at deposition on May 20th all documents and material used or created in the investigation of Starkie Cornett's allegations to include notes, recording, transcripts of records, documentation of pay increases, uniform pay increase disapprovals, documentation of pay increase requests by supervisors, and promotion requests by supervisors." [Doc. 45, Ex. D].

On April 26, 2024, the parties held a "meet and confer" to resolve the deposition notices to Skoric and Hatfield. The parties were unable to resolve that matter and agreed to request the Court's assistance by requesting an informal discovery conference. On

May 1, 2024, an informal discovery conference was held by the Honorable Stephanie A. Hambrick regarding Plaintiff's subpoena duces tecum directed to Park County Attorney Skoric and Deputy Attorney Hatfield. At the conclusion of the informal discovery conference the Court granted the Defendants' request for permission to file a motion for protective order. [Doc. 41].

Defendants filed their motion for Protective order on May 8, 2024, in which they asserted Plaintiff had not established the criteria to take the deposition of opposing counsel and further the discovery seeks information protected by the work-product doctrine and/or attorney-client privilege.

Plaintiff filed her response on May 24, 2024, wherein she argued that the County's EEO policy of requiring complaints to be submitted to the county attorney for investigation made such investigation relevant discovery. She asserts that the County has defended this claim on the basis of its EEO policy and thus waived its attorney-client privilege and work-product doctrine.

Defendants filed their reply on May 29, 2024. [Doc. 48].

## RELEVANT LAW

Courts are granted broad discretion when determining how discovery should be controlled and limited. *Homeland Ins. Co. of N.Y. v. Goldstein ex rel. Powell Valley Healthcare, Inc.*, 2019 WL 1928483, at *1 (D. Wyo. Apr. 30, 2019). Federal Rule of Civil Procedure 26(c)(1) states that "[t]he court may, for good cause, issue an order to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden to show good cause for the protective order. *Bhasker v. Kemper Casualty Ins. Co.*, 361 F. Supp. 3d 1045, 1119 (D.N.M. 2019) (quoting *Velasquez v. Frontier Med. Inc.*, 229 F.R.D. 197, 200 (D.N.M. 2005) (Browning, J.)).

Courts have held that a subpoenaing party may make discovery requests under Rule 45 that fall within the general scope of discovery as defined by Rule 26. *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003). Pursuant to Rule 26, the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Relevance is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)) ("[D]iscovery into any matter that bears on or that reasonably could lead to other matters that could bear on any issue that is or may be raised in a case."). When the relevance of a discovery request is not apparent on the face of the request, the party seeking discovery bears the burden of making the initial showing of relevance. *See Carlson v. Colorado Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 275 (D. Colo. 2022). When the discovery request is facially relevant, the

burden shifts to the party resisting discovery to establish either: (1) that the request is not relevant; or (2) that the relevance is so marginal that the potential harm outweighs the presumption favoring discovery. *See Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 403 (D. Wyo. 2017).

When analyzing proportionality, a court looks at "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The burden to prove disproportionality is on the party resisting discovery. *Sinclair Wyo. Refin. Co. v. A&B Builders, Ltd.*, 2017 WL 10309306, at *5 (D. Wyo. Oct. 31, 2017). These same considerations and burdens apply when determining what is discoverable through a Rule 45 subpoena.

## DISCUSSION

As a direct result of an employment discrimination complaint, an investigation was undertaken by attorneys in the Park County Attorney's Office. The investigation was apparently terminated upon Plaintiff's filing of a Charge of Discrimination with the EEOC. A letter to the EEOC confirmed that the investigation was nearly complete and that no evidence of discrimination had yet been located. The letter did outline the scope of the investigation and a summary of some of the findings. It also informs the EEOC that a partial report had been prepared by attorney Hatfield. Defendants filed

their Motion for Protective Order in response to Plaintiff's service of a Subpoena

Duces Tecum on April 26, 2024, for two members of the Defendants' county

attorney's office, Bryan Skoric and Jack Hatfield. Defendants rely upon three

arguments with the primary focus being upon limitations on conducting depositions of

opposing counsel.

Neither party disputes that the information sought is relevance or that it exceeds

reasonable proportions of discovery. This dispute arises more from the way Plaintiff

chose to seek the information than its discoverability. While this Court will discuss the

attorney-client privilege and work-product doctrine in context with the potential scope

of the subpoena and the deposition of Defendants' attorneys, it is clear that the some

of the documents sought by Plaintiff would be discoverable upon the use of the

appropriate discovery procedure and should have been provided in initial disclosures.[2]

## I.    *Attorney-Client Privilege*

This Court will first address Defendants' claim of Attorney-Client privilege.

Plaintiff seeks "notes, recordings, transcripts of records, documentation of pay

increases, uniform pay increase disapprovals, documentation of pay increase request

by supervisors and promotion requests by supervisors." [Doc 45-4, at 1–2].  On its

face some or most of the requested materials appear to be factual information which

could have been requested independent of the investigation by the county attorney's

---

[2] Neither party has discussed what was provided in its initial disclosures.

office.  It is significant that the subpoena does not list the "partial report" referenced in the letter to the EEOC.[3]  While Plaintiff has undertaken nine depositions and served two sets of written discovery, [Doc. 45, at 3] Defendants allege that the information sought has not been previously requested. [Doc. 45, at 7]. Plaintiff did not dispute this in her response.

The attorney-client privilege is available to governmental entities and is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169–70, 131 S. Ct. 2313, 180 L. Ed. 2d 187 (2011); *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)); *Ross v. City of Memphis*, 423 F.3d 596, 601 (6th Cir. 2005).  To establish application of the attorney-client privilege, the party claiming the privilege must prove there was: (1) a communication; (2) between privileged persons; (3) made in confidence; and (4) for the purpose of seeking, obtaining, or providing legal assistance.  *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007); *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir. 1985); Restatement (Third) of the Law Governing Lawyers § 68 (2000); Edna Selan Epstein, *The Attorney Client–Privilege*

---

[3] This Court will not address the law regarding discovery in investigation reports since the partial report prepared by the county attorney's office was not requested or addressed by either party.

*and the Work–Product Doctrine* 35 (3d ed. 1997).

Defendants raise the privilege defense in very general terms based on the broad nature of Plaintiff's request and that its attorneys would be deposed. Nevertheless, Plaintiff does not seem to contest the application of the attorney-client privilege, but rather that such privilege has been waived due to the Defendants' reliance upon the investigation in defense of an employment discrimination claim. [Doc. 47, at 11]. This argument fails since there is no showing that Defendants are relying upon this investigation in its defense. Defendants presented 12 affirmative defenses in its Answer and Assertion of Affirmative Defenses of Defendants and at no point is any investigation mentioned. [Doc. 6]. Plaintiff never explains how the investigation is being used as a defense, other than to state the county attorney wrote a letter to the EEOC upon notice of Plaintiff's claim. The letter does present some factual information developed during the investigation which it claims refutes Plaintiff's allegations. Importantly, Defendants were not defending on the basis of having conducted an investigation, but rather upon factual information discovered during the performance of the investigation. This is a critical distinction which renders Plaintiff's waiver assertion moot. Further, nothing in the letter [Doc. 45-2] relates in any manner to an attorney communication with its client. No waiver of the attorney client privilege occurred.

In addition to the records sought in the deposition, the questioning of

Defendants' attorneys could involve communications protected by the privilege. The Court lacks details as to what might be inquired to during a deposition so it can only be said that these depositions have the potential to seek privileged information. Accordingly, this Court finds that the attorney-client privilege does not justify granting a protective order. If such deposition were to occur, Defendants would be free to assert appropriate objections as necessary to assert and protect the privilege as this Court finds no waiver of the privilege to have occurred.

## II.   *Work Product Doctrine*

There is, however, the separate-yet-related issue of whether the work-product doctrine may preclude discovery. Discovery of work-product is addressed by Federal Rule of Civil Procedure 26(b)(3):

> *Documents and Tangible Things.*  Ordinarily, a party may not discovery documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i)   They are otherwise discoverable under Rule 26(b)(1); and
> (ii)  The party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtains their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3), (i)–(ii). Courts recognize two types of work product: "ordinary" and "opinion." *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d at 1186 (internal citations omitted). The latter—"opinion" work product—is almost never subject to discovery, as

it protects disclosure of an attorney's thoughts and stratagems. *See id.* By contrast, investigations conducted by counsel or on behalf of counsel would primarily fall within ordinary work product. Ordinary work-product is typically protected unless waived. *See, e.g.*, *Collardey v. All. for Sustainable Energy, LLC*, 406 F. Supp. 3d 977, 981–82 (D. Colo. 2019).

Plaintiff seeks discovery of "all documents and material used or created in the investigation of Starkie Cornett's allegations[.]" [Doc. 45, Ex. D]. This includes "notes, recordings, transcripts of records, documentation of pay increases, uniform pay increase disapprovals, documentation of pay increase request by supervisors and promotion requests by supervisors." *Id.* Insofar as Defendants argue such information is protected, Plaintiff asserts that they have waived this protection since they are defending against her claims on the basis of conducting an investigation. [Doc. 47, at 11]. As noted above, such waiver is not established here and Defendants retain their protections afforded by the work-product doctrine.

The Court finds the work-product doctrine protects the investigative process. While the investigative process and conclusions of the investigation may be protected as ordinary work product, *see Collardey*, 406 F. Supp. 3d at 981–82, the investigation may also contain "opinion" work product which is entitled to stronger protection. *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d at 1186.

Defendants do not appear to assert the work-product protection as to the factual information sought, but rather that some of the requested discovery and depositions may fall with the work-product protection.

The authorities provided by Plaintiff supports this Court's findings. *Walker v. Cnty. of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005), is a good example. In *Walker* the court was addressing the discovery of an investigative report prepared by an attorney hired to conduct an investigation of racial discrimination. The county asserted an affirmative defense that it promptly investigated the discrimination claim and effected appropriate remedies to avoid or limit their liability. The court undertook a very thorough review of the case law and the divergence in the case law. Ultimately, the court concluded that the assertion of the affirmative defense acted as a partial waiver of protections and ordered portions of the investigation released. The court did not allow discovery of the findings and conclusions section of the report, finding that such was the most protected form of work product protection.[4] This Court finds *Walker* inapplicable herein as Defendans's did not plead a defense that it conducted a proper and prompt investigation and instituted remedies. *E.E.O.C. v. George Washington Univ.*, 342 F.R.D. 161, 180–82 (D.D.C. 2022), also cited by Plaintiff, found no waiver even with a plead affirmative defense of "good faith efforts to comply with Title VII."

---

[4] What was referred to above as "opinion" work-product.

### III.   Deposition of Opposing Counsel

The last issue pertinent to this matter is whether Plaintiff may depose opposing counsel. The rule concerning deposition of opposing counsel allows a court discretion to limit discovery. *Van Dam v. Town of Guernsey, Wyo.*, No. 20-CV-060S, 2021 WL 2949561, at *4 (D. Wyo. Mar. 12, 2021). In *Van Dam*, the court denied a motion to compel the deposition of the town attorney and articulated the following standard:

> Deposing opposing counsel should be limited to circumstances where:
> "(1) no other means exist to obtain the information except to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."

2021 WL 2949561, at *8 (quoting *Shelton v. Am. Motors Corp.*, 805 F. 2d 1323, 1326 (8th Cir. 1986). "The burden is on the party seeking the deposition to establish that the criteria are met. Even if a party seeking to depose opposing counsel can establish these factors, it is within the trial court's discretion to issue a protective order prohibiting the deposition." *Cont'l Coal v. Cunningham*, No. 06-2122-KHV, 2008 WL 145245, at *2 (D. Kan. Jan. 14, 2008) (citing *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 630 (D. Kan. 2000)).

The Court, in granting Defendants' protective order, examines each of the elements in *Shelton*, as articulated in *Van Dam* and *Continental Coal*. While seemingly duplicative at times, as such elements tend to overlap with work product doctrine, the *Shelton* elements weigh toward finding good cause to prevent deposing opposing

counsel. The Court begins with the first element.

Starting with the first *Shelton* element, Plaintiff must prove no other means exist to obtain the information sought except by taking the depositions of Skoric and Hatfield. If there are other available sources of information—such as via interrogatories, requests for production of documents and for admission—the party seeking discovery should explore them first. *Id.* at **2–3. "The proponent of the deposition 'must identify the specific, unsuccessful measures [it] has taken to obtain the information, why they have failed, and that other resources are unavailable.'" *Id.* at *3 (quoting *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 379 (D. Kan. 1996))

Plaintiff has not met her burden of proof in showing that she has sought other means to obtain this information. Specifically, Plaintiff has not asserted that she has undertaken any other means to obtain the information which she seeks to elicit from Skoric and Hatfield, such as serving written discovery requests on Defendants. The first *Shelton* element is satisfied.

The second element requires Plaintiff to prove that the information sought is relevant and nonprivileged. It is evident from her subpoena duces tecum that Plaintiff is requesting the production of documents and materials used or created by Skoric and/or Hatfield in their investigation of Plaintiff's discrimination claim, including their notes. *See generally* [Doc. 45, Ex. D]. The application of the attorney-client privilege and the work product doctrine has been discussed in detail. It is foreseeable that

Plaintiff's requested discovery will include protected documents and information. As discussed previously, attorney notes are clearly work product and therefore privileged under Federal Rule of Civil Procedure 26(b)(3). It is also significant that Plaintiff seeks to depose Skoric and Hatfield, whose only involvement in this matter is in the role of counsel for the Defendants.

The third element requires Plaintiff to prove that the information sought is crucial to the preparation of the case. "The mere failure to establish that an inquiry into specific matters is crucial to the requesting party's case may support a court's decision to issue a protective order." *Id.* at *4 (citing *Boughton v. Cotter Corp.*, 65 F.3d 823, 831 (10th Cir. 1995)).

The underlying action revolves around a wage discrimination claim. It is difficult to imagine how any nonprivileged testimony from Skoric or Hatfield— concerning an investigation conducted by the Park County and Prosecuting Attorney *after* the Plaintiff had filed a discrimination claim—is crucial to the preparation of Plaintiff's case concerning wage discrimination based on gender. Therefore, this element similarly weighs against Plaintiff.

Over the last eight (8) months since the entry of the Initial Pretrial Order on August 24, 2023, Plaintiff had the opportunity to conduct discovery [Doc. 24]. This includes the opportunity to depose any employee of Park County Road and Bridge, past or present, who she believed was a witness, or had information relevant to her

allegation of wage discrimination. Plaintiff has already deposed nine (9) past and present employees and had the opportunity to explore with them all allegations in her Complaint concerning the alleged discrimination. Plaintiff fails to meet her burden of proof that the additional information she is seeking from the county attorneys involved in this matter is crucial to the preparation of her case. Accordingly, the Court finds that the Court has discretion to enter a protective order as to the depositions of Skoric and Hatfield on this basis alone.

Taken as a whole, this Court agrees with Defendants that Plaintiff cannot meet her burden to show that all three criteria of *Shelton* have been satisfied.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Protective Order concerning prohibiting the depositions of attorneys Skoric and Hatfield is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Skoric and Hatfield are relieved from any obligation of production of documents or appearance at any deposition as previously noticed.

**DATED** this ___4$^{rh}$___ day of June 2024.

Mark L. Carman
United States Magistrate Judge