Thomas A. Thompson [Wyo. State Bar No. 6-2640]
Wyoming Local Government Liability Pool
6844 Yellowtail Road
Cheyenne, Wyoming 82009
(307) 638-1911
(307) 638-6211 Facsimile
tthompson@lglp.net

Attorney for Defendants: Park County Board of County Commissioners, and Park County Road and Bridge Division

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| STARKIE CORNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 22-CV-00034-ABJ |
| | ) | |
| PARK COUNTY BOARD OF COUNTY | ) | |
| COMMISSIONERS and PARK COUNTY | ) | |
| ROAD AND BRIDGE DIVISION OF | ) | |
| THE PUBLIC WORKS DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendants, Park County Board of County Commissioners and Park County Road and Bridge Division, by and through their undersigned attorney, and file Defendants' Brief in Support of Motion for Summary Judgment.

### I.    SUMMARY OF THE CLAIMS

Plaintiff filed her First Amended Complaint (hereinafter "complaint") on March 4, 2022 [ECF No. 3]. The complaint alleges that Plaintiff is a female who has been employed by the Park County Public Works Department since November of 2016. *Id.* at ¶ 9. Plaintiff's complaint alleges that she was hired into the position of Equipment Operator I, Grade 11, Step 1 at the wage of

$13.71 an hour. *Id.* at ¶ 15. Plaintiff's complaint goes on to allege that this matter is brought to enforce provisions of the Equal Pay Act. *Id*. at ¶ 4. Plaintiff also alleges unlawful discrimination because of gender in violation of Title VII of the Civil Rights Act of 1964 as amended, and the Wyoming Fair Employment Practices Act of 1965, as amended. *Id.* at ¶ 1.

In support of Equal Pay Act claims, Plaintiff's complaint refers to two male comparators-"TM" and KM". Plaintiff alleges that TM, who Plaintiff acknowledged by way of her sworn deposition testimony is Tim Morrison, was hired in 2018 as an Equipment Operator III for Park County Road and Bridge. [Plaintiff's deposition at *Id*. at p. 104, Lines 19-25; p. 105, p. 106, Lines 1-5; Complaint at ¶¶ 28-29. Plaintiff further alleges that Morrison "did not meet the qualifications for Equipment Operator III." [ECF No. 3 at ¶ 28]. Plaintiff also alleges that KM, who Plaintiff acknowledged is Kenny Marchant, was hired in 2019 with the Park County Public Works Department as an Equipment Operator II "without the experience of running the equipment required to be an Equipment Operator II". *Id.* at ¶ 29. Plaintiff's complaint alleges that during fiscal year 2020 (calendar years 2019 to 2020) Morrison and Marchant received higher pay than she did. Plaintiff also alleges that both Morrison and Marchant were performing the equivalent work as Plaintiff. *Id.* at ¶ 30.  Plaintiff makes similar allegations for fiscal years 2021 and goes on to allege that she had "more skill and time running equipment and had the equal responsibilities as her male counterparts. *Id.* at ¶ 32. Plaintiff's complaint alleges several pay raises, promotions, and cost of living adjustments (COLA's) she has received, including being promoted to Equipment Operator II. *Id.* at ¶¶ 19-21, 22-25. Plaintiff alleges that she "had more seniority, time operating specialized equipment, and knowledge of county road systems than her male counter parts hired at higher pay rates then her during her employment at the Powell, WY division of the

Public Works Department." *Id.* at ¶ 36. Plaintiff alleges she is entitled to liquidated damages, reasonable costs and attorney's fees. *Id.* at ¶ 40.

## II.   STATEMENT OF MATERIAL FACTS

1.   Plaintiff applied for employment with Park County Road and Bridge on or about April 3, 2016. (Deposition of Starkie Cornett, p. 20, Lines 10-19 and Exhibit 1).

2.   At the time she applied for a job with Park County Road and Bridge Plaintiff's employment history consisted primarily of work in the food service industry as a bartender and as a waitress. *Id.* at Exhibit 1 and p. 32, Lines 13-25; p. 33, Lines 1-12.

3.   Plaintiff did not list any experience of operating heavy equipment on her job application, nor did she tell anyone she had any such experience when applying for the job of Equipment Operator I with Park County Road and Bridge. *Id.* at p. 280, Lines 11-24.

4.   Prior to April 3, 2016, Plaintiff testified that she had operated equipment for her own personal use on her property.  Plaintiff testified that she rented a skid steer twice, once for about 4 days and the second time for about a week. *Id.* at p. 27, Lines 2-11.

5.   At the time she applied for employment with Park County Road and Bridge, Plaintiff did not have a CDL or Class A motor vehicle license. *Id.* at p. 28, Lines 17-25.

6.   Park County Road and Bridge assisted Plaintiff in obtaining her CDL (Commercial Driver's License). *Id.* at p. 55, Lines 12-25; p. 56, Lines 1-20.

7.   Plaintiff started her employment with Park County Road and Bridge on November 7, 2016, as an Equipment Operator I, at the rate of $13.71 an hour. *Id*. at p. 72, Lines 6-12.

8.   Park County Road and Bridge hired Plaintiff without any experience operating heavy equipment. *Id.* at p. 79, Lines 3-15.

9.   Plaintiff acknowledged that Park County had an equal employment opportunity statement in their personnel policy. Plaintiff acknowledged receipt of the personnel policy at the time of her hire. *Id*. at p. 80, Lines 1-17.

10.  Plaintiff is currently the only female employee in Park County Road and Bridge. This would include 12 to 13 employees in the Cody district and eight employees in the Powell district. *Id.* at p. 98, Lines 4-16.

11. Plaintiff agrees that different equipment operators have different skill levels in the operation of heavy equipment. *Id.* at p. 102, Lines 15-18.

12. Plaintiff also agrees that different skill levels equate to being placed in different positions as Operator I, II or III. *Id*. at p. 102, Lines 19-21.

13. Plaintiff agrees that one of the criteria for higher pay is greater skill levels in the operation of equipment. This is true regardless of gender. *Id.* at p. 102, Lines 22-25; p. 103, Line 1-3.

14. Plaintiff agrees that just because an equipment operator is female does not mean they have to be paid the same as a male who has greater skill than they do. *Id.* at p. 103, Lines 14-25; p. 104, Lines 1-2.

15. Plaintiff agrees that there is a difference between operating a piece of heavy equipment and being skilled in the operation of that equipment. *Id.* at p. 104, Lines 3-6.

16. Plaintiff referred to two male comparators in her complaint. Those two (2) male comparators are Tim Morrison (TM) and Kenny Marchant (KM). *Id*. at p. 104, Lines 19-25; p. 105, p. 106, Lines 1-5; Complaint at ¶¶ 28-29.

17. When asked if these two comparators were getting paid more than her because they were male, Plaintiff responded that they were not being paid more because they were male, they were being paid more because of who they know. *Id.* at p. 105, Lines 6-16.

18. Plaintiff agrees that it is the judgment of her supervisor as to whether somebody has the skill level to be an Operator II or III. *Id.* at p. 111, Lines 13-22.

19. Plaintiff agrees that she had been given all cost-of-living adjustments (COLA's) while employed with Park County. *Id.* at p. 113, Lines 15-18.

20. Plaintiff is aware of at least one male equipment operator who is getting paid less than her. *Id.* at p. 114, Lines 6-17.

21. Plaintiff agrees that the attached job descriptions for Operator I, II and III were the job descriptions of these positions during her employment with Park County Road and Bridge. *Id.* at p. 117, Lines 7-13. (*Id*. at Exhibit 8).

22. There are different skill levels for Operator I, II and III. *Id.* at p. 283, Lines 19-25. Plaintiff agrees that being promoted to Operator II or III required more than just becoming familiar with different equipment, it involved being able to demonstrate a certain skill level. *Id.* at p. 284, Lines 2-16.  Plaintiff agrees that training on a piece of equipment for a week does not make that operator proficient on that equipment or give them journey level skills. *Id.* at p. 285, Lines 15-24.

23. When Plaintiff began her employment with Park County Road and Bridge, she worked in the Cody shop. She transferred to the Powell shop in approximately June of 2018 with 17 months of experience. Plaintiff agrees that at the time she transferred to the Powell shop she did not meet the minimum requirement for Equipment Operator II. *Id.* at p. 142, Lines 7-25; p. 143, Lines 1-13.

24.  The Equipment Operator II position that Plaintiff alleges she was not promoted to, in fact, was left vacant. *Id.* at p. 144, Lines 4-11.

25. Plaintiff has had a 57% wage increase since starting employment with Park County. This equals an increase of approximately 7.1 % per year. *Id.* at p. 191, Lines 8-23.

26. There is no documentation in Plaintiff's personnel file which would indicate that she was an Operator II before moving over to the Powell district shop. *Id.* at p. 196, Lines 7-10.

27. Cindy Stewart, a former female employee who retired from Park County Road and Bridge, worked as an Equipment Operator III. *Id.* at 200, Lines 7-12. When Cindy Stewart retired, she was making more than other male Equipment Operator III's. *Id.* at p. 287, Lines 22-25; p. 288, Lines 1-20; p. 294, Lines 2-6.

28. Within 1½ years of being transferred to the Powell district shop Plaintiff was promoted to Operator II by her supervisor Delray "Paco" Jones. *Id.* at p. 283, Lines 2-13.

29. Plaintiff was hired in 2017 as an Equipment Operator I. Also hired in 2017 as Equipment Operators were Arthur Briggs (male), John Klein (male) and James Flowers (male). Plaintiff and all other male employees hired in 2017 were all paid the same starting wage of $13.71 per hour. John Klein, a male, was hired as an Operator II and received the same wage ($13.71 per hour) that Plaintiff did as an Operator I. *Id.* at p. 286, Lines 8-25; p. 287, Lines 1-21 and Deposition Exhibit 13.

30. Plaintiff agrees that wage differences between equipment operators could be justified by years of experience or proficiency on equipment. *Id.* at p. 288, Lines 14-25; p. 289, Lines 1-6.

31. Plaintiff agrees it is not discriminatory to pay somebody a higher wage based on experience. *Id.* at p. 289, Lines 7-12.

32. Plaintiff admitted that she did not like her supervisor Delray "Paco" Jones as a foreman. *Id.* at p. 289, Lines 21-24.

33. Plaintiff agrees that it is her supervisor's discretion as far as who is assigned what equipment and who is doing what jobs. *Id.* at p. 291, Lines 13-16.

34. Plaintiff agrees that paying someone a lower wage is justified if they have no experience. *Id.* at p. 293, Lines 5-10.

35. In 2020, Elio Merino, a male, who was working as an Operator II, was being paid less than Plaintiff who also working as an Operator II. The plaintiff could not explain this and had assumed he was being paid more than her. *Id.* at p. 293, Lines 10-21.

**Brian Edwards**

36. Brian Edwards (hereinafter "Edwards") is the county engineer for Park County. (Deposition of Brian Edwards at p. 5, Lines 8-13). Edwards has been employed with Park County for almost 10 years. *Id.* at p. 6, Lines 22-23.

37. Edwards is responsible for managing the Park County Public Works Department which consists of the Engineering Division, the Solid Waste Division, and the Road and Bridge Division. *Id.* at p. 5, Lines 14-25; p. 6, Lines 1-4.

38. Park County has a grade/step scale pay plan. Grade defines a person's position and their duties. Steps are how you move up within a specific grade. *Id.* at p. 16, Lines 1-24 and Cornett Deposition Exhibit 13.

39. Cornett Deposition Exhibit 13 is a report Edwards generated, and which is used by him in his normal course of business. *Id.* at p. 17, Lines 1-8.

40. When considering wage increases, Edwards uses the information contained in Exhibit 13 and input from the Powell and Cody district foreman. *Id.* at p. 18, Lines 9-15.

41. Edwards testified that the foreman are experienced equipment operators who know what skill levels employees are at. *Id*. at p. 18, Lines 20-25; p. 19, Lines 1-6.

42. Edwards testified that Road and Bridge has three levels of equipment operators. Operator I is someone with minimal to no experience, all the way up to introductory level. Operator II is at the intermediate level. Operator III is skilled, and able to operate any equipment that Road and Bridge has. *Id.* at p. 20, Lines 1-25.

43. Park County fiscal years run from July 1st to June 30th. *Id.* at p. 29, Lines 9-10.

44. Plaintiff requested to moved up to Operator II on May 24, 2019. Ron Nieter's, who was her supervisor at that time informed Edwards that she had potential, but "she just needed time in the seat." Plaintiff was then recommended to move up to Equipment Operator II in 2020 for fiscal year 2021. *Id.* at p. 35, Lines 4-18.

45. Kenny Marchant, one of Plaintiff's comparators was hired on January 28, 2019. Marchant owned his own reclamation company. Edwards testified that Marchant had operated all kinds of equipment including small dozers, loaders, forklifts, skid steers, trucks, and had his CDL. *Id*. at p. 44, Lines 21-25; p. 45, Lines 1-20.

46. Tim Morrison, one of Plaintiff's other comparators was hired on September 10, 2018, as an Equipment Operator III. Morrison had worked with heavy trucks, operated all kinds of equipment with the City of Cody Street Department, had operated a motor grader and laid out gravel. *Id.* at p. 47, Lines 1-13.

47. Park County has an Equal Employment Opportunity policy. When an employee is considered for a promotion, race, color, religion, gender or national origin are not considered. Employees are promoted based upon their performance, experience and longevity with Park County. *Id.* at p. 71, Lines 17-25; p. 72, Lines 1-11.

48. During fiscal years 2019 and 2020, no equipment in Park County Road and Bridge received any wage increases. *Id.* at p. 72, Lines 14-25; p. 73, Lines 1-3 and Cornett Deposition Exhibit 13.

**<u>Delray "Paco" Jones</u>**

49. Delray "Paco" Jones (hereinafter "Jones") first began working as an Equipment Operator I for Park County Road and Bridge on November 2, 2022.

50. Prior to coming to work for Park County Road and Bridge, Jones had experience operating tractors, skid steers, excavators, loaders, dozers and truck/trailer combinations. (Deposition of Delray "Paco" Jones at p. 6, Lines 6-15).

51. It took Jones approximately 7 years to be promoted from Operator I to Operator II. *Id.* at p. 50, Lines 14-19.

52. Jones is the foremen of the Powell district shop for Park County Road and Bridge and has been Plaintiff's supervisor. *Id.* at p. 18, Lines 11-14.

53. Road and Bridge employees at the Powell district shop are assigned to different equipment for different seasons and don't rotate off that equipment. *Id.* at p. 50, Lines 24-25; p. 51, Lines 1-25; p. 52, Lines 1-14.

54. At the time Jones became foreman of the Powell district shop, his opinion was that Plaintiff did not have the skills to be an Operator II. This was in part based on what Plaintiff told him her skills were. *Id.* at p. 18, Lines 15-20.

55. Jones testified that there are certain qualifications that need to be met to move from Equipment Operator I to Equipment Operator II. Jones testified that job descriptions are used. Jones also testified that it is not just how many hours an employee spends on a piece of equipment,

but how proficient that employee is in the operation of that equipment. *Id.* at p. 52, Lines 15-25; p. 53, Lines 1-6.

56. Jones put Plaintiff on certain equipment to see if she was proficient in operating it. This included the road broom, tractor, roller and motor grader. *Id*. at p. 20, Lines 17-25; p. 21, Line 1.

57. Jones instructed a co-employee of Plaintiff's, Kris Cooper, to train Plaintiff on the dozer. *Id.* at p. 28, Lines 6-22.

58. Jones put Plaintiff with another Road and Bridge employee and gave her an opportunity to train on the operation of the motor grader. *Id.* at p. 21, Lines 2-17.

59. Hiring decisions are discussed by the two (2) shop foreman (Cody district and Powell district) and Brian Edwards (county engineer). The Park County Board of County Commissioners approves every employee hire. *Id.* at p. 29, Lines 2-25; p. 30, Lines 1-6.

**<u>Tim Morrison</u>**

60. Tim Morrison (hereinafter "Morrison") is one of the comparators Plaintiff refers to in her Complaint.

61. Morrison testified that he currently works for Park County Road and Bridge. Prior to working for Park County Road and Bridge, Morrison worked for the City of Cody (Wyoming) streets department, City of Loveland (Colorado) streets department, an asphalt company, Loveland Fire Rescue Authority, and served in the United States Navy. (Deposition of Tim Morrison at p. 6, Lines 19-25; p. 7, Lines 1-15.

62. Prior to being hired by Park County Road and Bridge, Morrison worked for the City of Cody and had experience operating road graders, dump trucks, backhoes, rollers, paint trucks, skid steers, excavators, belly dumps, water tankers and loaders. *Id.* at p. 7, Lines 16-25; p. 11, Lines 9-18.

63. Morrison operated the road grader with the City of Cody to maintain gravel alleys, plow snow on Main Street and maintain gravel roads. *Id.* at p. 8, Lines 5-19.

64. While working for the Loveland Fire Department Morrison testified that he had experience operating every fire truck they owned and plowed snow for the City of Loveland using road graders or snowplows. *Id.* at p. 9, Lines 7-14. Morrison also testified that he had experience operating a mower while working for the City of Loveland. *Id.* at p. 12, Lines 7-12.

65. While working for asphalt companies Morrison testified that he had experience operating a backhoe, landscape tractor, asphalt pavers, rollers, and motor grader. *Id.* at p. 10, Lines 4-18.

**Kenneth Marchant**

66. Kenneth Marchant (hereinafter "Marchant") is one of the comparators Plaintiff refers to in her Complaint.

67. Marchant testified that he has worked for Park County Road and Bridge for approximately five (5) years as of February 2024. (Deposition of Kenneth Marchant at p. 6, Lines 2-5.

68. Prior to working for Park County Road and Bridge Marchant worked for Marchant Reclamation which is his father's company. Marchant worked for his father while in high school and then for approximately eighteen (18) years after graduating high school. Marchant bought the reclamation company and sold it back to his father after owning it for two (2) years because he got tired of working on the road and traveling. *Id.* at Lines 11-20; p. 26, Lines 15-22.

69. While working for his father's company, Marchant operated medium to large tractors, skid steers and excavators. *Id.* at p. 7, Lines 2-24; p. 10, Lines 16-22.

70. Prior to coming to work for Park County Road and Bridge Marchant also had experience driving tractor trailer trucks, which included a 48-foot flatbed trailer and 53-foot flatbed trailer. *Id*. at p. 27, Lines 5-20.

71. Marchant also had his CDL when he came to work for Park County Road and Bridge, obtaining his CDL when he was 20 years old.  *Id.* at Lines 21-25.

72. Prior to working for Park County Road and Bridge, Marchant and Brian Edwards, the county engineer, were not friends, nor was Edwards a social acquaintance. *Id.* at p. 30, Lines 1-15.

73. Marchant testified that he interviewed for his position with Park County Road & Bridge. *Id.* at Lines 16-18.

**Ronald Nieters**

74. Ronald Nieters (hereinafter "Nieters") is a former employee of Park County Road and Bridge. (Deposition of Ronald Nieters at p. 6, Lines 1-3).

75. Nieters worked for Park County Road and Bridge for 38 years. *Id.* at Lines 4-6.

76. At the time of his retirement, approximately three (3) years ago, Nieters was the foreman of the Cody shop. *Id.* at 11-24.

77. Nieters was the person that recommended employees in his shop for advancement. *Id*. at p. 11, Lines 7-9.

78. Nieters recommended Plaintiff be hired as a truck driver, Operator I. *Id.* at Lines 20-25.

79. Nieters testified that Plaintiff did not have her CDL at the time of hire, "We got it for her. *Id.* at p. 12, Lines 18-22.

80. Nieters testified that Road and Bridge trained Plaintiff on various pieces of equipment. *Id.* at p. 13, Lines 6-25; p. 14; p. 15, Lines 1-11.

81. Nieters recommendations for advancement are based upon both time and experience "They've got to be able to know what they're doing. They've got to be able to be let alone." *Id.* at p. 15, Lines 13-25; p. 16, Lines 1-3.

82. Nieters testified although he evaluated Plaintiff for advancement, he never recommended Plaintiff for advancement because, "She needed time in the seat." *Id.* at p. 16, Lines 25; p. 17, Lines 1-11.

83. Nieters testified that he recommended Plaintiff for a wage increase, but it was shot down by the county commissioners. *Id.* at p. 17, Lines 17-25; p. 18, Line 1.

84. Nieters testified that there may have been a wage freeze at that time. "We didn't get raises for years." *Id.* at p. 19, Lines 14-18.

85. Nieters also testified that Plaintiff never talked to him about mistreatment from other employees in the Cody shop. *Id.* at p. 24, Lines 11-13.

**<u>Rule 30(b)(6) Deposition</u>**

86. Brian Edwards, the Park County Engineer and Bobbie Hinze testified as 30(b)(6) witnesses for Park County, Wyoming. (30(b)(6) Deposition at p. 4, Lines 6-25).

87. Brian Edwards provided an updated Summary of Road & Bridge Wage Adjustments which had previously been marked as Exhibit 13. *Id.* at p. 9, Lines 15-22.

88. Edwards testified that the fiscal year starts July 1st and ends on June 30th. *Id.* at p. 13, Lines 7-10. There is usually a budget meeting with the County Commissioners. *Id.* at p. 14, Lines 6-8.

89. Edwards testified that when the County Commissioners authorize a budget, he is authorized to work within that budget. This includes staying within the budget for total salaries. *Id.* at p. 40, Lines 5-9; p. 43, Lines 19-25 and p. 44, Lines 1-6.

90. Exhibit 22 was introduced which shows the Annual Wage Information for Budgets from fiscal years 2016-2017 through 2024-2025.

91. Edwards testified that when there are wage freezes in the County, it is across the board for full-time employees, part-time employees and seasonal employees. *Id.* at p. 32, Lines 7-18. This would include a County-wide freeze (except for possible law enforcement). *Id.* at p. 32, Lines 20-25, p. 33, Lines 1-4.

92. Exhibit 26 was introduced as the Park County Pay Plan. Edwards explained that the document is a summary of all positions within Park County and includes the position, the department, pay grade and the pay range. For each pay grade, there are a number of steps. The document shows that for a specific position, what is the assigned grade, so you can apply that to a wage plan steps within that grade. *Id.* at p. 49, Lines 13-25.

93. Exhibit 26 indicates that the Park County Pay Plan was originally adopted in 2010, with the most recent revision on July 16, 2023. *Id.* at p. 50, Lines 1-6 and p. 51, Lines 6-10.

94. When the County awards a cost-of-living adjustment (COLA) it is across the board to all employees. *Id.* at p. 52, Lines 5-13.

95. Exhibit 28 was introduced as a summary of wage adjustments given to County employees, approved or authorized by the County Commissioners. It tracks COLA's, merit increases and bonuses. *Id.* at p. 77, Lines 2-25.

96. Exhibit 28 shows in 2016 there were no wage increases in the County. In 2017 there were a few individual raises in the County. In 2018 there was a five (5%) percent COLA and a few individual raises given. In 2020, there was a two (2%) percent bonus for department heads to distribute and a few individual raises given. *Id.* at p. 83, Lines 3-15.

97. Exhibit 29 was introduced as a one-time bonus given equally to all Park County Road and Bridge employees except the County Engineer and the foremen who did not take a bonus but gave their bonus to the Road and Bridge employees. *Id.* at p. 84, Lines 17-25 and p. 85, Lines 1-19.

## III.    STANDARD OF REVIEW

The standard for summary judgment is clear. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). Testimony or other evidence "grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. See Fed. R. Civ. P. 56(c)(1)(A)-(B).

In considering the motion, the Court views the record and all reasonable inferences that might be drawn from it in the light most favorable to the party opposing summary judgment. *Dahl v. Charles F. Dahl, MD., P.C. Defined Ben. Pension Trust*, 744 F.3d 623, 628 (10th Cir. 2014). Generally, the moving party has "both the initial burden of production on a motion for summary

judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.,* 318 F.3d 976, 979 (10th Cir. 2003)). If the moving party carries this initial burden, the nonmoving party may not rest on its pleadings but must bring forward specific facts showing a genuine dispute for trial as to those dispositive matters for which it carries the burden of proof. *Id.* (citing *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. See *Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

**IV.   ARGUMENT**

**a.  Plaintiff's Equal Pay Act (EPA) Claim is Without Merit.**

This Court has had occasion to address the merits of an Equal Pay Act claim. "EPA claims proceed in two steps. First, the plaintiff must establish a prima facie case of discrimination by demonstrating that employees of the opposite sex were paid differently for performing substantially equal work. *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304,1311 (10th Cir. 2006).

> To establish a prima facie case of pay discrimination under the EPA, a [female] plaintiff must demonstrate that: (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions

where the work was performed were basically the same; [and] (3) the male employees were paid more under such circumstances.

*Riser v. QEP Energy,* 776 F.3d 1191, 1196 (10th Cir. 2015) (citation and internal quotation marks omitted).

If the plaintiff succeeds in establishing a prima facie case of wage discrimination, the burden of persuasion then shifts to the defendant to prove that the wage disparity was justified by one of four permissible reasons. *Tidwell v. Fort Howard Corp.,* 989 F.2d 406, 409 (10th Cir. 1993). These reasons are: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; (4) a disparity based on any factor other than sex. *Id*. (citing 29 U.S.C. § 206(d)(1)).

*Mickelson,* 460 F.3d at 1311. [B]ecause the employer's burden in an EPA claim is one of ultimate persuasion; in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary. *Id.* (quoting *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3rd Cir. 2000)). To meet this burden, an employer must submit evidence from which a reasonable factfinder could conclude not merely that the employers proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity. *Riser*, 776 F.3d at 1198. (quoting *Mickelson,* 460 F.3d at 1312)."

*Weidenbach v. Casper-Natrona County Health Dep't.*, 563 F.Supp. 3d 1170, 1182-1183 (D. Wyo. 2021).

### b. Plaintiff's Male Comparators – Morrison and Marchant.

In support of Equal Pay Act claim, Plaintiff's complaint refers to two male comparators – "TM" and KM". Plaintiff alleges that TM, who Plaintiff acknowledged by way of her sworn deposition testimony is Tim Morrison, was hired in 2018 as an Equipment Operator III for Park County Road and Bridge. (Plaintiff's deposition at p. 104, Lines 19-25; p. 105, p. 106, Lines 1-5; Complaint at ¶¶ 28-29). Plaintiff further alleges that Morrison "did not meet the qualifications for Equipment Operator III." [ECF No. 3 at ¶ 28].

Plaintiff's second male comparator, referred to in the complaint as KM, is Kenny Marchant who was hired in 2019 as an Equipment Operator II. Plaintiff alleges that Marchant was hired "without the experience of running the equipment required to be an Equipment Operator II". *Id.* at ¶ 29.

Once Plaintiff establishes a prima facie case, a defendant must articulate a legitimate, nondiscriminatory reason for the pay disparity. *Spraque v. Thorn Americas, Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997).  Defendants assert the affirmative defense that any pay differential between Plaintiff and her male comparators (Morrison and Marchant) is based on factors other than sex. The undisputed facts in this matter, which includes Plaintiff's own sworn deposition testimony, support Defendants position that any pay differential is not the result of gender discrimination.

### c.   Plaintiff's hiring and employment with Park County.

Plaintiff started her employment with Park County Road and Bridge on November 7, 2016, as an Equipment Operator I, at the rate of $13.71 an hour. Deposition of Plaintiff at p. 72, Lines 6-12. Park County Road and Bridge hired Plaintiff to be a heavy equipment operator without Plaintiff having any experience on heavy equipment. *Id.* at p. 79, Lines 3-15. When Plaintiff began her employment with Park County Road and Bridge, she worked in the Cody shop. She transferred to the Powell shop in approximately June of 2018 with 17 months of experience. Plaintiff agrees that at the time she transferred to the Powell shop she did not meet the minimum requirements for Equipment Operator II. *Id.* at p. 142, Lines 7-25; p. 143, Lines 1-13.  The record reflects that within 1 ½ years of being transferred to the Powell district shop Plaintiff was promoted to Operator II by her supervisor Delray "Paco" Jones. *Id.* at p. 283, Lines 2-13.

Plaintiff agrees that different equipment operators have different skill levels in operating heavy equipment. *Id.* at p. 102, Lines 15-18. Plaintiff also agrees that different skill levels equate

to being placed in different positions as Operator I, II or III. *Id.* at p. 102, Lines 19-21. Plaintiff agrees that one of the criteria for higher pay is greater skill levels in the operation of equipment. This is true regardless of gender. *Id.* at p. 102, Lines 22-25; p. 103, Lines 1-3. Plaintiff also agrees that wage differences can be justified by years of experience or proficiency on equipment. *Id.* at p. 288, Lines 14-25; p. 289, Lines 1-6. According to Plaintiff it is not discriminatory to pay somebody a higher wage based on experience. *Id.* at p. 289, Lines 7-12.

> **d. Comparators Morrison and Marchant were hired at a higher rate of pay based on their substantial experience.**

An employee's prior experience is a factor "other than sex" for purposes of the Equal Pay Act. *Angove v. Williams-Sonoma, Inc*., 70 Fed. App'x 500, 508 (10th Cir. 2003) (citing *Irby v. Bittick,* 44 F.3d 949, 955 (11th Cir. 1995)), see also *Balmer v. HCA, Inc.,* 423 F.3d 606, 612 (6th Cir. 2005). The record supports no reasonable conclusion other than the fact that Plaintiff's male comparators were hired at a higher wage based on their years of experience operating heavy equipment.

Tim Morrison testified that prior to working for Park County Road and Bridge, Morrison worked for the City of Cody (Wyoming) streets department, City of Loveland (Colorado) streets department, an asphalt company, Loveland Fire Rescue Authority, and served in the United States Navy. (Deposition of Tim Morrison at p. 6, Lines 19-25; p. 7, Lines 1-15.) While working for the City of Cody, Morrison operated road graders, dump trucks, backhoes, rollers, paint trucks, skid steers, excavators, belly dumps, water tankers and loaders. *Id.* at p. 7, Lines 16-25; p. 11, Lines 9-18. Morrison operated the road grader with the City of Cody to maintain gravel alleys, plow snow on Main Street and maintain gravel roads. *Id.* at p. 8, Lines 5-19. While working for the Loveland Fire Department Morrison testified that he had experience operating every fire truck they owned and plowed snow for the City of Loveland using road graders or snowplows. *Id.* at p.

9, Lines 7-14. Morrison also testified that he had experience operating a mower while working for the City of Loveland. *Id.* at p. 12, Lines 7-12. While working for asphalt companies Morrison testified that he operated a backhoe, landscape tractor, asphalt pavers, rollers, and motor grader. *Id.* at p. 10, Lines 4-18.

It is non-sensical for Plaintiff to on the one hand testify that pay differences can be justified by years of experience, that different skill levels equate to being placed in different positions as Operator I, II and III, and on the other hand argue that Morrison and Marchant's experience does not justify them being hired as an Operator III and II. Morrison and Marchant's experience in operating heavy equipment supports Defendant's position that the wage difference between Plaintiff and her male comparators was not gender based discrimination but based on their significant difference in years of experience. No rational jury could find to the contrary.

### e.  Defendants utilized a gender-neutral pay plan.

It is undisputed that Park County Road and Bridge utilized a pay scale that is gender neutral. (Plaintiff Deposition Exhibit 13.) Brian Edwards, the Park County Engineer testified that Park County utilizes a grade/step scale pay plan. Grades define a person's position and their duties. Steps are how you move up within a specific grade. Edwards deposition at p. 16, Lines 1-24 and Plaintiff's Deposition Exhibit 13. Exhibit 13 of Plaintiff's deposition is a summary report that Edwards generated and is used by him in his normal course of business. *Id.* at p. 17, Lines 1-8. When considering wage increases for Park County Road and Bridge employees, Edwards uses Exhibit 13 and input from the Powell and Cody district foreman. *Id.* at p. 18, Lines 9-15.

The bottom half of Exhibit 13 lists former employees of Park County Road and Bridge. The top half list current employees of Park County Road and Bridge. Exhibit 13 also includes job titles and hourly rate of pay by fiscal year. Plaintiff was hired in 2017 as an Equipment Operator

I. Also hired in 2017 as Equipment Operators were Arthur Briggs (male), John Klein (male) and James Flowers (male). Plaintiff and all other male employees hired in 2017 were all paid a starting wage of $13.71 per hour. John Klein was hired as the more skilled level of Operator II and received the same wage ($13.71 per hour) that Plaintiff received as an Operator I. Plaintiff's deposition at p. 286, Lines 8-25; p. 287, Lines 1-21 and Deposition Exhibit 13.  The pay plan also demonstrates its gender neutrality in that certain male employees who worked in the same job as Plaintiff were paid less than Plaintiff. In 2020, Elio Merino (a male), who was working as an Operator II, was being paid less than Plaintiff who also working as an Operator II. This was pointed out to Plaintiff during her deposition, and she could not explain this and assumed Merino was being paid more than her. *Id.* at p. 293, Lines 10-21. Plaintiff's own testimony and the undisputed facts demonstrate that Park County Road and Bridge utilized a gender-neutral pay plan. The record is devoid of gender-based wage discrimination. A bona-fide, gender-neutral pay classification system constitutes a "factor other than sex" under the EPA. *Washington Cnty. v. Gunther*, 452 U.S. 161, 171 (1981) (courts cannot substitute their judgment for that of an employer with a "bona fide job rating system" (citation omitted)); *Corning Glass Works v. Brennan*, 417 U.S. 188, 201, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974).

Defendants assert that the undisputed facts in this matter support their motion for summary judgment. As a matter of law, Defendants are entitled to summary judgment on Plaintiff's Equal Pay Act claim.

### f.   There is no evidence of willfulness under the EPA statute of limitations.

In regard to the applicable statute of limitation under the EPA, the U.S. Supreme Court has explained that "willful" in this statute means "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988); see also *Mumby v. Pure Energy Servs. (USA), Inc*., 636 F.3d 1266, 1270 (10th Cir. 2011) ("To fall under the three-year limitation, the plaintiff must show that the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute."). Whether an EPA violation was willful is a mixed question of law and fact, with the factual issues generally predominating. *Pabst v. Oklahoma Gas & Elec. Co.*, 228 F.3d 1128, 1137 (10th Cir. 2000).

"The employee bears the burden of proving that the employer acted willfully." *Fowler v. Incor*, 279 F. App'x 590, 600 (10th Cir. 2008) (unpublished) (citing *McLaughlin*, 486 U.S. at 135). Thus, at this summary-judgment stage, it is Plaintiff's burden to put forth evidence, viewed in the light most favorable to her, sufficient to create a genuine dispute of material fact as to whether Park County either "knew" its conduct violated the EPA "or showed reckless disregard for the matter of whether its conduct was prohibited by" the EPA. *Id.* at 602 (quoting *McLaughlin*, 486 U.S. at 133). There is no evidence in the record that Defendant Park County either knew or acted recklessly in paying male employees and the Plaintiff differently.

### g.  Title VII claim.

Plaintiff's complaint refers to the Charge of Discrimination that Plaintiff filed with the Wyoming Fair Employment Program (WFEP) and the Equal Employment Opportunity Commission (EEOC). [ECF No. 3 at ¶ 1]. Plaintiff alleges unlawful discrimination against her "because of gender in violation of Title VII of the Civil Rights Act of 1964 as amended, the Equal Pay Act of 1963, and the Wyoming Fair Employment Practices Act of 1965, as amended. *Id.* Plaintiff's complaint alleges a single claim against Defendant-Compensation Discrimination Claim *Id.* at ¶¶ 13-41.

There are two ways a plaintiff can proceed on a claim of salary discrimination: on a theory of intentional discrimination on the basis of sex in violation of Title VII, or on a theory of wage discrimination on the basis of sex in violation of the EPA. This is a significant distinction because a plaintiff's burden to prove discrimination varies depending on the statute at issue. Under Title VII, the plaintiff always bears the burden of proving that the employer intentionally paid her less than a similarly-situated male employee. *Ryduchowski v. Port Auth. of N.Y. & N.J.,* 203 F.3d 135, 142 (2d Cir. 2000); *Sinclair v. Auto. Club of Okla., Inc.,* 733 F.2d 726, 729 (10th Cir. 1984).

Because of this difference in the statutes, the analysis involved in determining whether the plaintiff has met her burden differs depending on the statute at issue. Under Title VII, a plaintiff must prove that the employer intentionally discriminated against her because of her sex. *Jaramillo v. Colo. Judicial Dep't,* 427 F.3d 1303, 1306 (10th Cir. 2005). When the plaintiff relies on circumstantial evidence of discrimination--as is the case here--we apply the three-step burden-shifting framework set forth in *McDonnell Douglas* and its progeny. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-07, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Plotke*, 405 F.3d at 1100. Under *McDonnell Douglas*, the aggrieved employee must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Relevant to this case, a prima facie showing of discrimination consists of evidence that a female employee "occupies a job similar to that of higher paid males." *Miller v. Auto. Club of N.M., Inc*., 420 F.3d 1098, 1114 (10th Cir. 2005) (quotation omitted). If the plaintiff makes such a showing, the burden of production shifts to the employer "to state a legitimate, nondiscriminatory reason for its adverse employment action." *Plotke*, 405 F.3d at 1099 (quotation omitted). "If the employer meets this burden, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Id.*

*Mickelson v. New York Life Ins. Co*., 460 F.3d 1304, 1311(10th Cir. 2006).

"Once a prima facie case is established, the defendant must articulate a legitimate, non-discriminatory reason for the pay disparity. This burden is exceedingly light; the defendant must merely proffer non-gender-based reasons, not prove them. Once the defendant advances such a justification, the plaintiff must show that the defendant, regardless of the proffered reasons, intentionally discriminated against her. That is, the plaintiff must show that a discriminatory

reason more likely than not motivated [the employer] to pay her less." *Sprague v. Thorn Americas., Inc.,* 129 F.3d 1355. 1363 (10th Cir. 1997).

Defendants assert even if Plaintiff is able to establish a prima facie case of discrimination, Defendants argument and analysis set forth above in regard to Plaintiff's EPA claim state a legitimate, nondiscriminatory reason for its employment action. Defendants are entitled to judgment as a matter of law, unless the Plaintiff can show that there is a genuine issue of material fact as to whether Defendants proffered reasons are pretextual.

## V.   CONCLUSION

The undisputed facts in this matter prove that any wage disparity between Plaintiff and her male comparators is justified by one of the four permissible reasons in an EPA case: a disparity based on any factor other than sex. The evidence is undisputed that Plaintiff was hired with no experience operating heavy equipment. Other male employees were hired at the same starting salary as Plaintiff, including a more experienced Operator II. Plaintiff 's male comparators were hired at a higher rate of pay based on their extensive experience and Park County Road and Bridge's gender-neutral pay scale. The Defendants did not violate the EPA and the record in this matter supports Defendants' assertion that no rational jury could find to the contrary.

As to any alleged violation of Title VII, Defendants have articulated a legitimate, non-discriminatory reason for the pay disparity. The case law is clear that this burden is exceedingly light; the Defendants must merely proffer non-gender-based reasons, not prove them. Since the Defendants have advanced such a justification, the burden now shifts to Plaintiff to show that Defendants, regardless of the proffered reasons, intentionally discriminated against her.

The Defendants respectfully request that this Court find that there are no issued of material fact and Defendants are entitled to judgment as a matter of law on both Plaintiff's EPA and Title VII wage discrimination claims.

DATED this 3rd day of October 2024.

/s/ *Thomas A. Thompson*
Thomas A. Thompson

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of Court and served other parties by the following means on this 3rd day of July 2024.

Marshall E. Keller                                    [✓] CM-ECF
Keller Law Firm, PC
marshall@kellerlawpc.com

Phillip A. Nicholas                                   [✓] CM-ECF
Nicholas & Tangeman, LLC
nicholas@wyolegal.com

/s/ *MaryBeth Oatsvall*
MaryBeth Oatsvall
Wyoming Local Government Liability Pool