## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| STARKIE J. CORNETT,<br><br>      Plaintiff,<br><br>v.<br><br>PARK COUNTY BOARD OF COUNTY COMMISSIONERS and its PARK COUNTY ROAD AND BRIDGE COMMISSION and PARK COUNTY ROAD & BRIDGE DIVISION OF THE PUBLIC WORKS DEPARTMENT,<br><br>      Defendants. | 22-CV-00034-ABJ |

## PLAINTIFF'S BRIEF IN RESPONSE TO AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Philip A. Nicholas (WSB No. 5-1785)
NICHOLAS & TANGEMAN, LLC
170 N. Fifth Street
P.O. Box 0928
Laramie, WY 82073
(307) 742-7140
(307) 742-7160 Fax
nicholas@wyolegal.com

Marshall E. Keller #7-6406
Keller Law Firm, P.C.
PO Box 111
116 N. 5th Street
Thermopolis, WY 82443
(307) 864-2318
marshall@kellerlawpc.com

Attorneys for Plaintiff Starkie J. Cornett

Pursuant to the Fed. R. Civ. P. Rule 56, Plaintiff Starkie Cornett files this Brief in response to and opposition to *Defendant's Motion for Summary Judgement* filed October 3, 2024. (ECF No. 58) Defendants' motion should be denied because there are genuine disputes as to material facts such that movants are not entitled to judgment as a matter of law.

## I.    NATURE OF THE CASE.

Plaintiff Starkie Cornett is an employee of Park County working in its Road & Bridge Division. Plaintiff claims, and the facts below show, that she has been unlawfully discriminated against because of gender in violation of Title VII of the Civil Rights Act of 1964 as amended, the Equal Pay Act of 1963, and the Wyoming Fair Employment Practices Act of 1965, as amended.

## II.    STATEMENTS OF MATERIAL FACTS.

### A.    Plaintiff's statement material facts supporting her claims.

The following statement of facts (hereinafter "Pl. SOF") support Plaintiffs' claims, and the *Plaintiff's Narrative of the Facts* set out below.

***Park County fails to provide any training on its Equal Employment Policies and there is direct evidence of express and blatant bias and discrimination.***

1.     Brian Edwards is the County Engineer managing the Public Works Department which includes the Road & Bridge Division. (Edwards ECF 61-1, Ex. 1, pp. 5, l. 16—p. 6, l. 1, p. 5:12-6:18,  Edwards 30b6 61-1, Ex. 2 p. 57:11-1)

2.     While Park County has adopted an Equal Opportunity Policy, it has not offered or provided any training on its Policy to its County Engineer or his subordinates. (Edwards 30(b)(6) ECF 61-1, Ex. 2, pp. 59:11-65:05, 60:16-60:11, 61:05-62:14, 63:25-64:04, 64:06-64:09)

3.     Park County provides no training to its Department Heads or Supervisors relating to the identification of discrimination or the recognition of implicit bias in the workforce. (*Id*., at 65:02-65:21)

4.     Having no experience or training in the area of employment discrimination, the

County Engineer refers all complaints relating to disparate treatment to the County Attorney for investigation.

5.      Delray "Paco" Jones is the County's Supervisor for the Powell Road & Bridge District. (ECF 61-3, Ex. 13)

6.      Paco Jones became Starkie Cornett's direct supervisor.( *Id*.; Edwards ECF 61-1, Ex. 1 p. 19:22-23, 57:23-58:6, Jones ECF 61-1, Ex. 3 p. 8:18-9:22)

7.      When Paco Jones became Starkie Cornett's supervisor he stopped and prevented further training opportunities for Plaintiff. Jones denied her the opportunity for additional "seat time" preventing her from fully developing her skills.  (Cornett ECF 61-1, Ex. 8 p. 143:14-21, 217:22 – 219:1, 220:1-17;  Jones ECF 61-1, Ex. 129 p. 45:11-21)

8.      Former Park County Road & Bridge employee Kristofer Cooper testified that he overheard Paco Jones state on many occasions words to the effect that, "women don't belong in operating equipment." (Cooper ECF 61-2, Ex. 4, p 27, l. 7-11) He observed Paco Jones treat Plaintiff more poorly than her male co-employees. (*Id*., at p. 23, l. 7-16)

9.      Road & Bridge has hired only two females workers as Operators, they are Cindy Stewart and Plaintiff Starkie Cornett.

10.      After receiving complaints from the Plaintiff, County Engineer Brian Edwards instructed Cindy Stewart to teach Starkie Cornett how to buck up and be nasty so she would fit in better at Road & Bridge. (Stewart ECF 61-1, Ex. 7, p. 22:20-23:6)

11.      Cindy Stewart testified that she quit Road & Bridge because her foreman Paco Jones treated more poorly that other male workers. He would make females work separately from the crew. He called her derogatory names, including referring to her as "Consuela" which she felt was degrading. (*Id*., at p. 18:25-22:13, 63:13-16)

12.      Co-employees observed and witnessed Paco Jones refusing to provide Ms. Cornett

with training opportunities. (Cooper, ECF 61-1, Ex. 4, p 2 23, l. 7-16)

      13.     Co-employees observed and witnessed Paco Jones refusing to provide Ms. Cornett

with overtime opportunities. (*Id.*)

      14.     The following is from the Road & Bridge Wage Chart dated 08/12/2024. It is

maintained by the County Engineer. It shows that Plaintiff is being paid less than her male

counterparts for the same wok:

| Morrison, Tim | Powell | Operator III | 9/10/2018 | | 5.9 | Grade 17, Step 14 | $ | 26.10 | |
| Briggs, Arthur (Rowdl) | Powell | Operator III | 2/11/2017 | | 7.5 | Grade 17, Step 9 | $ | 24.67 | |
| Marchant, Kenny | Powell | Operator II | 1/28/2019 | | 5.5 | Grade 15, Step 12 | $ | 23.58 | |
| Norton, Mark | Cody | Operator III | 2/14/2019 | | 5.5 | Grade 17, Step 5 | $ | 23.52 | |
| Denney, Orrin | Powell | Operator II | 2/6/2023 | | 1.5 | Grade 15, Step 11 | $ | 23.31 | |
| Decker, Jeremy | Cody | Operator II | 7/21/2021 | | 3.1 | Grade 15, Step 11 | $ | 23.31 | |
| Cornett, Star | Powell | Operator II | 4/25/2016 | | 8.3 | Grade 15, Step 10 | $ | 23.04 | |

(ECF 61-1, Ex. 30)

      15.     The Chart above shows that Plaintiff with 8.3 years of service and is now assigned

Grade 15, Step 10. Her male peers in Powell are now all at Grade 17. Male employees in the Cody

shop with far less experience are at her same grade. (*Id.*) The pay difference between Plaintiff and

her coworkers in Powell with less longevity is significant.

      ***Park County's Position has changes over time.***

      16.     In a letter sent by the Park County Attorney to the Equal Employment Opportunity

Commission (EEOC) on July 15, 2020, the County Attorney represented that,

      a.    Unbeknownst to Ms. Cornett at the time she made her internal complaints, Public Works had previously submitted a request to the Park County Board of Commissioners ("Commissioners'") to increase her rate of pay based on the performance of her duties in 2019. However, requested pay increases were uniformly disapproved for all county employees by the Commissioners based on budgetary constraints";

      b.    She had significantly less experience and expertise in operating equipment;

      c.    The reason for failing to promote or increase pay was based on a budget freeze and failure of Starkie cornett's lack of experience operating a wide variety of equipment; and

      d.  It was against Road & Bridge's internal policy to promote with prior approval of the County Commissioners approval.

(ECF 61-3, Ex. 22)

17.    As shown below, none of the foregoing reasons are true. The Park County Personnel Manual states that once a budgeted position is authorized any vacancy can be filled without review or approval of the Commissioners. (ECF 61-2, Ex 13) Road & Bridge has the authority even during freezes to award advances so long as they stay within their overall budget. Plaintiff did not have significantly less experience, and if she did it is because she was denied training and seat time by Paco Jones.

18.    Upon Starkie Cornett's filing Charge of Discrimination with the WFEC/EEOC, the County Attorney suspended its investigation into her charges. (ECF 61-2, Ex 22) The effect of that termination is that no County employee has ever investigated her charges or complaints, and she has no protection or benefit under the County's EEO Policy.

19.    After making her complaints, Paco Jones began recording equipment damage incidents in her personnel file. (Cornett ECF 61-1, Ex. 8, pp. 147:24 – 151:3, 153:3-161:16)  One of the claims for equipment damage was blown tires (*Id.*)  Brian Edwards stated blown tires are not put into employee files normally. (Edwards ECF 61-1, Ex. 2 p. 65:7-10) When her male co-worker Tim Morrison damaged a road grader and a truck it was never put into his employee file. (Edwards ECF 61-1, Ex. 3, pp. 66:15-67:4, Cooper ECF 61-1, Ex. 4, p. 13:5-15, Jones ECF 61-1, Ex. 3, p. 34:14-22)  Tim Morrison damaged a water truck which was never reported to Brian Edwards. (Edwards ECF 61-1, Ex. 1. p. 67:11- 68:10) Kenny Marchant bent and damaged the bumper on one of the Road and Bridge dump trucks. (Jones ECF 61-1, Ex. 3 p. 36:5-21)(See photos of damages not reported caused by co-workers at ECF 61-3, Ex. 16-18)

**The County requires and seeks to maintain a crew of Heavy Machinery Operators to maintain its roads and bridges.**

20.     Road & Bridge's primary function is to plow snow in the winter and maintain roads in the summer. (Edwards 30(b)(6) ECF 61-1, Ex. 2 p. 24:1-25) All employees perform the same tasks when performing this work.

21.     At the budget level, the County Commissioners authorize positions for "Operators." Once a position is approved, the County Engineer has discretion to assign grades and steps for each Operator. He does so upon the recommendation of his foreman, making no independent analysis. His only constraint is to remain within his total budgeted funds when providing pay increase. The County Commissioners have never refused funds for step increases requested by Brian Edwards. (Edwards (30)(b)(6), ECF 61-1, Ex. 2, pp. 30:18-21, 39:20-40:19, 31:10-41:15, 42:22-43:02 (describing flex authority), 44:02-13)

22.     Because there is no restriction on the number of Operators I, II and III, Road & Bridge can advance for each authorized "Operator" position. Road & Bridge may assign Grades and Steps to any Operator position at their discretion. And, Paco Jones can exercise his discretion to limit Plaintiff's grade and pay level.  (Edwards (30)(b)(6), ECF 61-1, Ex. 2, p. 16:20–17:21)

23.     Brian Edwards does not evaluate the skills of new hires or current employees himself, evaluate implicit bias in his foreman's recommendations, nor evaluates the overall pay schedule to assess whether there is unequal pay among staff. (*Id.*, Edwards ECF 61-1, Ex. 1, p. 10:4–22)

24.     Road & Bridge seeks to hire candidates with the greatest potential for training. Typically, the County hires inexperienced candidates and then trains them up to become Operator III qualified. (Edwards 30(b)(6) 61-1, Ex. 2, p. 25:12-27:23)

25.      Road & Bridge prefers to hire inexperienced operators to train and mold into Operator III's. This is because they can teach them to operate in their preferred manner.  (*Id.*)

26.     Road & Bridge foremen are provided no standards or guidelines for exercising their judgment and evaluation of equipment operator skills. (Jones  ECF 61-1, Ex. 3, p. 20:13 -16)

*Starlie Cornett is recruited to the County with promise that she would be trained.*

27.     Cody Road & Bridge Foreman Ron Nieters recruited Starkie Cornett as a Road & Bridge flagger. On or about April 25, 2016, she began that job on a temporary basis. (ECF 61-2, Ex. 16 Personnel Action Forms; Nieters ECF 61-1, Ex. 9, p. 12:2 – 7, Stewart ECF 61-1, Ex. 7, p. 42:2–13, Edwards ECF 61-1, Ex. 1, p. 27:23–28:5)

28.     Ron Nieters mentored, and directed others to mentor, Starkie Cornett to help her qualify for and obtain a commercial driver's license. He trained her to become qualified on the sweep, end dump truck, belly dump, skid steer, backhoe, and the front-end loader which are skills required for an Operator. (Nieters ECF 61-1, Ex. 9, p. 12:10-13:5, Cornett ECF 61-1, Ex. 8, p. 209:24–210:15)

29.     On November 7, 2016, Road & Bridge hired Starkie Cornett as a full-time Operator I with a Pay Grade of 11 and a Step of 1.  (ECF 61-2, Ex. 17 Personnel Action Forms) There is no dispute that she was qualified to hold the position of Operator at the time of her hire. Nor is there any dispute that she is qualified to fill the Operator II position today.

30.     Road & Bridge adjusts grade levels based upon acquire skills listed in posted Job Descriptions. (ECF 61-1, Ex. 18 Equipment Operator Descriptions; Edwards ECF 61-1, Ex.1 p. 26:14- 27:9)

31.     Starkie Cornett actively sought out training to  improve her skills as an Operator. Under Ron Nieters' supervision, she acquired the skills to operate the equipment identified for the classification of Operator I and Operator II. Her prior foreman Dale Hobby and co-worker Kristofer Cooper willingly continued her training on all heavy equipment, including the water truck, roller, chip spreader, excavator, dozer, and road grader listed in the various Operator grades.

(Nieters ECF 61-1, Ex. 1, p. 13:6 to 15:11, Copper ECF 61-1, Ex. 4, p. 13:16- 18:11; Cornett ECF 61-1, Ex. 8, p. 211:24- 217:6; Briggs ECF Ex. 6, p. 13:7- 13:11)

32. Training involves demonstration by experienced Operators in the yard, and supervised "seat time" to develop comfort and proficiency with the heavy equipment.  (Briggs ECF 61-1, Ex. 6, p. 11:17-12:13; Nieters 61-1, Ex, 9, p. 8:19-10:20)

33. Starkie Cornett operated the same equipment and did the same job as her male counterparts positioned as Operators I and II. (Briggs 61-1, Ex. 6, p. 12:21-3:11; Nieters ECF 61-1, Ex. 1, pp. 15:23-16:19, Cooper 61-1, Ex. 4, pp. 18:3-20, 19:20- 23:6; Stewart ECF 61-7, p. 15:21-8:14; Triplett ECF 61-1, Ex. 10, pp.  8:11-13:2; Marchant ECF 61-1,Ex. 5, p. 15:1-16:12)

34. Plaintiff Cornett moved from the Cody District to the Powell District where she moved from Ron Nieter's supervision to Dale Hobby until he retired. Upon Hobby's retirement Paco Jones became her supervisor.

35. After Paco Jones assumed the role as Supervisor in Powell, Road & Bridge hired new male employees at higher grades and pay than Plaintiff. They refused to advance her grade and pay level to match her skills. During the same time, they advanced the grade for male Operators to Operator II and increased their total pay. Even though Starkie Cornett was performing the same work and skills required for an Operator II, Road & Bridge did not consider nor raise her pay. (61-3, Ex. 23 Summary of Wages; Marchant ECF 61-1, Ex. 5, p. 14:1-3, 12:13 -24:25, 16:19-17:15; Briggs ECF 61-1, E. 6, pp. 7:5– 25, 8:24-11:16; Edwards  ECF 61-1, Ex. 1. pp. 24:3 -25, 41:3-42:2, 44:19 – 22)

36. On February 14, 2020, Starkie Cornett lodged a complaint with her Department Head Brian Edwards. He did not investigate the claim and simply turned the matter over to the County Attorney. (Edwards ECG 61-1, Ex, 1, p. 56:8–14) The Couty Attorney did not timely investigate the complaint.

37.     The County did not advance Starkie Cornett to Operator II until July 4, 2021, which was well after she filed her *Charge of Discrimination* with WPEP/EEOC.  (ECF 61-2, Ex. 17 Personnel Action Forms, Ex. 13 Summary of Wages; Edwards ECF 61-1, Ex. 1, 35:4-18, Cornett ECF 61-1, Ex. 8, pp. 203:11-14, 205:9-23)

38.     Brian Edwards had the authority to advance Starkie Cornett's grade and pay within the  position "Operator" without seeking the Commissioner approval. (*Id.*, Edwards 30(b)(6) ECF 61-1, Ex. 2, pp.19:23-23:06, 42:3 -15)

39.     During "hiring freezes" imposed by the County Commissioners, Brian Edwards still could request promotions and chose not to request a promotion for Starkie Cornett to Operator II until July 14, 2021. (Edwards 30(b)(6) ECF 61-1, 1,  pp.34:20 – 36:3, PL. SOF ¶¶ 18-20)

40.     Plaintiff's male co-workers Kenny Marchant, Tim Morrison and Arthur Briggs all required training on equipment used by the Road & Bridge after being hired. (Edwards ECF 61-1, Ex. 1. p. 46:21-13, Cooper ECF 61-1, Ex. 4,  p. 18:6-21:15, Briggs 61-1, Ex, 6, p. 8:18-12:16; Marchant ECF 61-1, Ex. 5, p. 11:20-14:3)

41.     When Kenny Marchant and Tim Morrison were hired, Starkie Cornett was already trained on the equipment required for a higher grade and step promotion to Equipment Operator II. To become "proficient" on the new equipment she only required seat time. Marchant and Morrison were given training and seat time. Cornett was not. The two males were allowed the support to move to Operator III grade with step pay. (Edwards ECF 61-1, Ex. 1,  p. 44:47:9-13, Cooper ECF 61-1, Ex. 4, p. 18:6-21:15; Briggs ECF 61-1, Ex. 6, p. 8:18-12:16; Marchant ECF 61-1, Ex. 5, p. 11:20-14:3)

42.     Advancement opportunities exist whenever a person retires, quits, or is terminated only because committed funds are made available for redistribution. (Edwards 30(b)(6) ECF 61-1, Ex, 3,  p.30:13–21:10;  Edwards ECF 61-1, Ex. 1, p. 32:14–33:3.) However, Brian Edwards

confirmed in the County's 30(b)(6) deposition that the limiting factor is his overall budget and that he generally has funds for advancement. When he doesn't, the Commissioners rarely refuse his request for advancement pay.  (Edwards (30)(b)(6), ECF 61-1, Ex. 2, pp. 30:18-21, 39:20-40:19, 31:10-41:15, 42:22-43:02, 44:02-13)

43.    Paco Jones refused to allow Starkie Cornett to work "comp time" while her male counterparts were allowed to do so. Plaintiff was just as qualified as her male co-workers for the overtime work. (Jones ECF 61-1, Ex . 3, p. 46:5-47:14, Cooper  ECF 61-1, Ex. 4, p. 24:17-25:19, 44:14–25)

44.    On June 8th, 2020, Plaintiff timely filed a *Charge of Discrimination* with the Wyoming Fair Employment Program (WFEP) and the Equal Employment Opportunity Commission (EEOC)  (ECF 61-2, Ex 19 WFEP Charge)

45.    This matter was referred to the EEOC which undertook the investigation, COVID arrived. On February 16, 2022, the EEOC advised Plaintiff Starkie J. Cornett that she would need to commence suit to preserve her equal pay claims. The EEOC retained jurisdiction to continue its investigation.

46.    This matter was stayed by the presiding Judge on May 10, 2022, pending issuance of the WFEP/EEOC decision. (ECF 3)

47.    EEOC was stalled and Plaintiff asked for a right to sue letter. On June 21, 2023, the United States Department of Justice issued a *Right to Sue letter*.  (ECF 61-3, Ex. 21)

**B.    Plaintiffs' statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist.**

 Plaintiff asserts that there are genuine issues of fact relating to the following material facts cited by Defendants (references are to Defendant's paragraph numbers as "¶##":

1)    ¶11. Plaintiff agrees that different equipment operators have different skill levels in the operation of heavy equipment.

*Response*: Plaintiff disagrees with the state and its context. See, PL. SOF ¶¶ 21-26.

2)      ¶12. Plaintiff also agrees that different skill levels equate to being placed in different positions as Operator I, II or III.

*Response*: Misstates Plaintiff's opinions and understandings. PL. SOF ¶¶ 21-26, 37.

3)      ¶13. Plaintiff agrees that one of the criteria for higher pay is greater skill levels in the operation of equipment. This is true regardless of gender.

*Response*: Misstates Plaintiff's opinions and understandings. PL. SOF ¶¶ 21-26, 37.

4)      ¶18. Plaintiff agrees that it is the judgment of her supervisor as to whether somebody has the skill level to be an Operator II or III.

*Response*: Misstates Plaintiff's opinions and understandings. PL. SOF ¶¶ 21-26, 37.

5)      ¶22. There are different skill levels for Operator I, II and III. Id. at p. 283, Lines 19-25. Plaintiff agrees that being promoted to Operator II or III required more than just becoming familiar with different equipment, it involved being able to demonstrate a certain skill level. Id. at p. 284, Lines 2-16. Plaintiff agrees that training on a piece of equipment for a week does not make that operator proficient on that equipment or give them journey level skills.

*Response*: Misstates Plaintiff's opinions and understandings. PL. SOF ¶¶ 21-26, 37.

6)      ¶44. Plaintiff requested to moved up to Operator II on May 24, 2019. Ron Nieter's, who was her supervisor at that time informed Edwards that she had potential, but "she just needed time in the seat." Plaintiff was then recommended to move up to Equipment Operator II in 2020 for fiscal year 2021.

*Response*: Misstates Plaintiff's opinions and understandings. PL. SOF ¶¶ 31-37.

7)      ¶53. Road & Bridge employees at the Powell district shop are assigned to different equipment for different seasons and don't rotate off that equipment.

*Response*: See Narrative argument (2), pages 13-14.

8)      ¶54. At the time Jones became foreman of the Powell district shop, his opinion was that Plaintiff did not have the skills to be an Operator II. This was in part based on what Plaintiff told him her skills were.

*Response*: Deny, Paco Jones' opinion Is that women should not operate heavy equipment.

PL SOF 8.

### C.    Narrative Statement of Facts.

#### (1)    *Starkie Cornett is recruited by the County and become a qualified Equipment Operator.*

Starkie Cornett was reared in the Cody, Wyoming area. She attended high school in Cody and earned her GED in 1986. (Cornett, ECF 61-1, Ex. 8, p. 275:7–15) After high school, she developed a hardwood flooring business while full time working as a waitress and bartender. (*Id*., p. 17:1-6)

Ron Nieters recruited Starkie Cornett to work as a part time flagger. (*Id*., at p. 18:22-19:4) Starkie Cornett started as a flagger with the Road & Bridge on April 15, 2016. She had no prior heavy equipment experience. (PL. SOF ¶ 27) In that position, Starkie Cornett learned that Road & Bridge was recruiting Operators. (See, ECF 161-3, Ex. 25 Position Advertisements) With the help of Ron Nieters, she studied for and secured her commercial driver's license. (Cornett, ECF 61-1, Ex. 8, p. 56:13-20) Plaintiff was motivated, worked hard,  and sought out trained on Road & Bridge's heavy equipment. Ron  Nieters and his crew assisted her in acquiring the skills she would require to later advanced to Operator II. (PL. SOF ¶¶ 28, 31)

Road & Bridge hired Plaintiff full-time as an Operator I at Grade 11 and Step 1 on November 7, 2016.  (PL. SOF ¶27) While at the Cody shop Starkie Cornett continued her training on the equipment. (PL. SOF ¶ 29)

In June of 2018 Starkie Cornett transferred to the Powell shop where Dale Hobby became her foreman.  From the time Plaintiff was hired of hire as a flagger in 2016, until Paco Jones became foreman over the Powell shop, Starkie Cornett was provided and had completed training on and operated the sweep, end dump truck, the belly dump, skid steer, backhoe, front end loader, water truck, roller, excavator, dozer, and the road grader. (PL. SOF ¶29, 31) She gained the skills required to advance in Grade and Step; however, Paco Jones's efforts to stop her training. The result is that her advancement and wage growth has been delayed far behind her male coworkers.

(PL. SOF ¶ 35) The resulting impact over Plaintiffs' work career is great. (See, Plaintiffs' Expert Report ECF 34 filed 2/16/2024)

When Plaintiff began working in Road & Bridge, she was one of two female Operators, now she is the only one remaining. (PL. SOF ¶¶ 9-11)  Defendants suggest that Cindy Stewart was able to become an Operator III and then retired. (*Id.*, ¶ 11) What they fail to advise the Court is that Cindy Stewart quit her position at Road & Bridge because of the poor treatment from Paco Jones. (Cornett ECF 61-1, Ex. 8 p. 18:25-22:13)

### (2)    *Park County Road & Bridge.*

The primary role of Road & Bridge during the summer is to maintain roads and complete special projects within Park County. (PL. SOF ¶18)  Its principal function during the winter is plowing snow. *Id.*  The majority of the work that must be completed is the same regardless of which Operator plows the roads and highways. Equipment Operators I, II, and III perform the majority of the same tasks.

County Engineer Brian Edwards is the head of Road & Bridge. (PL. SOF ¶1)  The Cody and Powell shops are managed by foremen who report to Brian Edwards. (*Id.*)  During the time relevant to her complaint, Starkie Cornett worked in the Powell shop under Paco Jones. (PL. SOF ¶¶ 5, 6)

The "grade level" for Operators I, II, and III are established by the County. Operator I is assigned Grade 11, Operator II is assigned Grade 14, and Operator III is assigned Grade 17. Grade assignments are based on the employee's proficiency with heavy equipment. (ECF 61-2, Ex. 18) Brian Edwards acknowledges that longevity too is considered in advancement. (Edwards 30(6)(6) ECF 161-2, p. 58:02-25)

Operator I is designated as an entry-level position requiring a high school diploma or GED. The Operator II description recommends a high school diploma or GED, plus four (4) years of

experience operating specialized heavy equipment such as commercial trucks, operate a front-end loader, mower, chip spreader, dozer, water truck, sweeper, plow and sander, as well as repair potholes, monitor flood control channels to prevent blockage, clear culverts of debris, and to flag traffic safely. The Operator III description designates the same equipment as Operator II, and requires five (5) years of equipment operation experience including a grader, plus one (1) year of specialized training and a working knowledge of the county road system.

Within each Grade, the County's Pay Plan permits the County Engineer to assign an employee "Steps." Generally, there are 7 to 15 Steps available within each Grade. Each Step is associated with a higher hourly rate of pay. An Operator I with a high number of Steps may have a higher pay rate than and Operator II with fewer steps. There is no established criteria for the assignment of Steps.

The County requires a minimum number of heavy equipment operators to serve the community. Heavy equipment operator employees are hired into the position of Operator. And the County's objective is to have a fully trained workforce of Operators with the skills of Grade III. (Edwards 30(b)(6) ECF 61-1, Ex. 2, pp. 30:18-21, 31:08-17) Because the County cannot count on hiring only skilled employees, they must often hire employees and then train them. (PL. SOF ¶ 24, 25) Road & Bridge expects the foreman to provide equal training Opportunities to all employees regardless of gender or whether they are Operator I, II, or III. (*Id.*) The County's goal is to cross train all Operators on all equipment. (Edwards 30(b)(6) ECF 61-1, Ex. 2, pp. 67:17-68:07)

While the County uses job descriptions for hiring, they are only guides for advancement. (PL. SOF ¶ 25, 26) Foreman's recommendations override the guidelines for the equipment operator job descriptions. (*Id.*) Road & Bridge has no written standards for advancement and promotions. (PL. SOF ¶ 39) Grade advancements are based on the foreman's recommendation. (PL. SOF ¶ 21) Step increases are awarded in a discretionary manner unequally to males than

females.(*Id.*)

### (3)    *Starkie Cornett performed at the Same Skill Level as the Other Operators*

As an Operator I, Starkie Cornett performed the same job as her male counterparts at the Road & Bridge. (PL. SOF ¶ 33)  She operated the same equipment as the male Equipment Operator II's in the Powell shop. (*Id.*)  Any perceived deficiency in operating equipment only required more "seat time" to become proficient which her foreman gave to her male counterparts. (PL. SOF ¶ 7)

Starkie Cornett was recommended for promotion to Operator II in July of 2020 by her then foreman Ron Nieters. (Edwards ECF 61-1, Ex. 1, p. 29:1– 7)  Several other operators in the Powell shop observed Starkie Cornett operate equipment and believed she operated at the same proficiency as any other Equipment Operator II. (PL. SOF ¶ 12)

### (4)    *Supervisor Paco Jones stops training for Starkie Cornett and prevents her from gaining the needed skills to advance her career.*

Historically, Road & Bridge advances Operators through on the job training. (PL. SOF ¶ 24-26)  Foremen are responsible for providing training opportunities to employees. (PL. SOF ¶ 16) The foreman and Operator III's are the persons designated to teach new skills to the employees they supervise. (Edwards 30(b)(6) ECF 161-1, Ex. 2, p. 28:23-29:14; ECF 161-2, Ex. 18)

While assigned to Ron Nieters, Starkie Cornett was allowed to operate and learn all the equipment required for the positions of Operator I and II. (PL. SOF ¶ 35)  When her supervision was transferred to Paco Jones, her training was stopped. (*Id.*)  Plaintiff requested training multiple times without success. Paco Jones refused and limited her training which limited her opportunity for advancement and competitive wages. (PL. SOF ¶ 31)

### (5)    *The County hires new male employees who are provided immediate training and advancement opportunities, while Starkie Cornett is held back.*

The Road & Bridge does not require a skills test or observation of new hires to determine their qualifications. (Edwards ECF 161-1, Ex. 1, p. 10:4-22)  Brian Edwards relied on

their resume and references if he could them. *Id.*

In fiscal year 2019, Starkie Cornett was still being paid as an Operator I. (ECF 161-2, Ex. 17) At that time, Road & Bridge hired Kenny Marchant as an Equipment Operator II. (PL. SOF ¶ 40-41) Arthur Briggs, who had started as an Equipment Operator I the same year as Starkie Cornett, was advanced to Equipment Operator II in 2018. (ECF 16-3, Ex. 23))

Tim Morrison was hired the same year as Equipment Operator III. (*Id.*) Defendants argue that Tim Morrison had more experience than Plaintiff on the same type of equipment used by Road & Bridge. (PL. SOF ¶ 22)  However, Tim Morrison failed to perform at an adequate level and needed to be trained by Road & Bridge to operate the equipment properly. (*Id.*) He was lowered to Operator II the second year. (Edwards now states that the Operator III classification was an error.) Tim Morrison damaged a road grader, a truck, and a water truck. (Pl. SOF ¶ 19; See, photos of damages not reported caused by co-workers at ECF 61-3, Ex. 16-18)

When hired, Kenny Marchant had a CDL and experience operating a tractor, skid steer, and mini excavator for a highway reclamation and landscaping company. (*Id.*) He required training on a majority of the equipment required to be an Equipment Operator II by the Road & Bridge. (PL. SOF ¶ 40) Kenny Marchant bent and damaged the bumper on one of the Road and Bridge dump trucks. (Jones ECF 61-1, Ex. 3 p. 36:5-21)

At the time Arthur Biggs was hired, Plaintiff possessed the same basic skills to operate the grader as Briggs. Biggs, however, was given more training for advancement.

Plaintiff was afforded limited time to operate the grader under the supervision of Arthur Briggs and Tim Morrison. (Briggs, ECF 161-1,Ex. 6, p. 15:5– 6:22) When Paco Jones inquired about her ability to run the grader, Arthur Briggs reported that she could do the job and just needed more time to become proficient. (*Id.*)

*(6)    **Starkie Cornett was treated more poorly than her male counterparts reducing her income.***

Employees of the Road & Bridge are awarded "comp time." (Jones ECF 161-1, Ex. 3, p. 46:5-14) "Comp time" is work over 40 hours a week, which can be used for vacation time instead of paid overtime. *Id.* Granting comp time is a normal practice for the Road & Bridge (*Id.*, Cooper ECF 161-1, Ex. 4 p. 25:6-19, 44:14 – 25) Much of the comp time was performed on the weekends or plowing snow. (*Id.*)

Unlike her male counterparts, Starkie Cornett was denied requests for comp time. (PL. SOF ¶ 43) The reason given by Paco Jones was that he did not want Starkie Cornett working alone.(*Id.*) It is undisputed that Starkie Cornett regularly worked alone during the regular work week. (*Id.*, PL. SOF ¶ 43, Page 6 above.) The given excuse is not a valid reason for denying her comp time when the policy was to regularly allow male co-employees comp time.

*(7)    **Park County Road & Bridge does not increase wages for Starkie Cornett until after this lawsuit is filed.***

Starkie Cornett hired on as an Equipment Operator I, Grade 11 step, on April 25, 2016 (PL. SOF ¶ 29) She put in the time and effort to learn the equipment. (PL. SOF ¶ 31-35) She was also performing the job of an Equipment Operator II and had the proficiency of an Equipment Operator II. (PL. SOF ¶ 35) However, she was not allowed to advance to Operator II as Arthur Briggs was in 2018. (PL. SOF ¶ 14) Plaintiff was not promoted to Operator II until July 4, 2021, after her complaint was filed on February 14, 2020. (PL. SOF ¶ 37)

*(8)    **Brian Edwards has discretion in hiring and advancing employees.***

Brian Edwards has the authority to promote or give raises at his discretion so long as he stays within the total budget. (PL. SOF ¶ 20-21) His budget was approved annually by the County Commissioners, and he was allowed to hire and promote as he wished (*Id.*)

The County Commissioners rarely, if ever, refused to fund a replacement, vacancy, or

advancement requested by Edwards. (PL. SOF ¶ 21)   Even during times when the County Commissioners denied filling vacancies (which happened only for short times) it permitted advancement of employees. (PL. SOF ¶ 21)   Brian Edwards testified that Road & Bridge have maintained the same number of employees over the years. (Id.)

Brain Edwards had the authority to advance or hire by using other portions of his unused variable expenditures within his budget. (*Id*.)   His only requirement was to stay within his total budget, of which labor is a small portion.  (*Id.*)

## II.    ARGUMENT.

### A.    <u>Standard of review for summary judgment for all claims of discrimination.</u>

At this summary judgment stage Courts must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his or her favor. The Court may grant summary judgment only if the movant shows that there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented.  *Laul v. Los Alamos Nat'l Lab'ys,* 765 F. App'x 434, 439–40 (10th Cir.), cert. denied, 140 S. Ct. 514, 205 L. Ed. 2d 318 (2019)  The Court must construe the factual record and all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Reynolds v. Sch. Dist. No. 1, Denver, Colo.,* 69 F.3d 1523, 1531 (10th Cir. 1995).

### B.    <u>The elements of claims based on gender discrimination and the Fair Employment Practices Act.</u>

The burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to all of Plaintiffs claims including the wage violation claim. *Jones v. Peopleready Inc.,* No. 21-CV-01688-PAB-MEH, 2022 WL 2176286, at *6 (D. Colo. June 16, 2022).

In a Title VII case, the initial burden is on the employee to make a prima facie showing of discrimination by the employer." *Nulf v. International Paper Co.*, 656 F.2d 553, 557 (10th Cir.1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).). Under Title VII, a plaintiff is required to "show that there were promotional opportunities available that were filled by males, and that she was qualified for promotion, and that despite her qualifications she was not promoted." *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1362 (10th Cir. 1997); *Tidwell v. Fort Howard Corp.,* 989 F.2d 406, 409 (10th Cir.1993); *Meeks v. Computer Associates International*, 15 F.3d 1013, 1019 (11th Cir.1994) (the McDonnell Douglas framework requires a Title VII plaintiff to establish an intent to discriminate on the part of her employer); *Sheaffer v. State ex rel. Univ. of Wyoming ex rel. Bd. of Trustees*, 2009 WY 19, ¶ 22, 202 P.3d 1030, 1039 (Wyo. 2009).

Once Plaintiff has met that burden, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the questioned action.

If the employer meets this burden, the employee must show that the stated reason is actually a pretext for prohibited discrimination. *Id*. at 558 (quoting *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825). Pretext can be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Riser v. QEP Energy,* 776 F.3d 1191, 1200 (10th Cir. 2015). Plaintiff may prove her case with circumstantial evidence. *Sheaffer v. State ex rel. Univ. of Wyoming ex rel. Bd. of Trustees,* 2009 WY 19, ¶ 22, 202 P.3d 1030, 1039 (Wyo. 2009)

Wyoming Statutes § 27-9-105 provides, that "[i]t is a discriminatory or unfair employment

practice":

(i)    For an employer to refuse to hire, to discharge, to promote or demote, or to discriminate in matters of compensation or the terms, conditions or privileges of employment against, a qualified disabled person or any person otherwise qualified, because of age, sex, race, creed, color, national origin, ancestry or pregnancy;

(ii)   For a person, an employment agency, a labor organization, or its employees or members, to discriminate in matters of employment or membership against any person, otherwise qualified, because of age, sex, race, creed, color, national origin, ancestry or pregnancy, or a qualified disabled person;

***

The Wyoming Supreme Court has determined that Wyoming's law prohibiting discrimination in employment matters on the basis of age is similar to the federal law. As a result, Wyoming Courts are to refer to federal case law for guidance in analyzing claims under the Fair Employment Practices Act. *Rollins v. Wyoming Trib.-Eagle*, 2007 WY 28, ¶ 8, 152 P.3d 367, 370 (Wyo. 2007).

The current version of the federal Equal Pay Act provides that no employer subject to the Fair Labor Standards Act, "shall discriminate, within any establishment…between employees on the basis of sex by paying wages to employees…at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 USCA § 206(d)(1) The Equal Pay Act does not require that the plaintiff exhaust her administrative remedies by filing charges with the Equal Employment Opportunity Commission or other state administrative agencies before a lawsuit can be filed, unlike Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and similar federal and state employment discrimination statutes. Thus, an aggrieved employee can proceed directly into state or federal court without filing administrative charges, and the employer will not be entitled to assert as a defense that the plaintiff failed to exhaust her administrative remedies before bringing suit. 26 Am. Jur. Proof of Facts 3d <u>Proof of Violation of Equal Pay Act</u> 269 (Originally published

in 1994).

To establish a prima facie case under the Equal Pay Act, a plaintiff must demonstrate that,

(1)    the plaintiff was performing work which was substantially equal to that of
       employees of the Opposite sex, taking into consideration the skills, duties,
       supervision, effort and responsibilities of the jobs;
(2)    the conditions where the work was performed were basically the same; and
(3)    employees of the Opposite sex were paid more under such circumstances.

If the plaintiff can establish a prima facie case, the burden of persuasion then shifts to the

defendant to establish that the wage disparity was justified because of,

(1)    a seniority system;
(2)    a merit system;
(3)    a pay system based on quantity or quality of output; or
(4)    a disparity based on any factor other than sex.

Because the use of the employer's burden in an EPA claim is one of ultimate persuasion,

in order to prevail at the summary judgment stage, the employer must prove at least one affirmative

defense so clearly that no rational jury could find to the contrary. *Allen v. Garden City Co-op, Inc.*,

651 F. Supp. 2d 1249, 1256 (D. Kan. 2009)(Plaintiff in an EPA case need not prove that the

employer acted with discriminatory intent.); *Sprague v. Thorn Americas, Inc*., 129 F.3d 1355, 1364

(10th Cir. 1997)(Under the EPA, the onus is on the employer to establish that the pay differential

was premised on a factor other than sex.); *Riser v. QEP Energy*, 776 F.3d 1191, 1198 (10th Cir.

2015).

C.    **The facts support Claimants' clams based on equal pay and Discrimination.**

(1)    *Plaintiff has established a prima facie case to support her equal pay claim
       and claim of discrimination based upon her gender.*

The law is clear that an Equal Pay Act violation may be established even though employees

whose pay is the subject of comparison perform substantially equal work at different times.

*Weidenbach v. Casper-Natrona Cnty. Health Dep't,* 563 F. Supp. 3d 1170, 1181 (D. Wyo. 2021).

To prove her case, Starkie Cornett must demonstrate that:

1.    She was performing work which was substantially equal to that of employees of the Opposite sex, taking into consideration the skills, duties, supervision, effort and responsibilities of the jobs; She was substantially performing the same work as the Opposite sex;

2.    The conditions where the work was performed were basically the same; and

3.    Employees of the Opposite sex were paid more under such circumstances.

*Allen v. Garden City Co-op, Inc.,* 651 F. Supp. 2d 1249, 1258 (D. Kan. 2009).

<u>*Starkie Cornett is a member of a protected class:*</u> Women are members of a protected class under Title VII. *Mar v. City of Wichita*, No. 22-3137, at *6 (10th Cir. Sep. 26, 2023). Starkie Cornett is a female working for the Road & Bridge. (PL. SOF ¶1) As a female, Starkie Cornett is a member of a protected class.

<u>*Promotional opportunities existed that were filled by males:*</u> Plaintiff must prove promotional and/or advancement opportunities did exist.  *Sprague v. Thorn Ams., Inc*. at 1362.

Defendants' position that advances were only available when positions became available is a pretext. First,  the evidence shows that advances in Grade within the position of Operator were always available. Second, even if a jury were to believe Defendants, many vacancies appeared providing advancement opportunity for Plaintiff.

During the time Starkie Cornett was with the Powell shop Cindy Stewart quit, Dale Hobby retired, Chris Carter retired, and Kristopher Cooper was terminated. (PL. SOF ¶24, Exhibit 13) Males outside of the Road & Bridge were given advancement opportunities.  (PL. SOF ¶11)

Plaintiff has demonstrated that there was always the budget and authority to advance her with her male peers. Males were hired and given advancement opportunities when Plaintiff was not.

<u>*Starkie Cornett was qualified for the position at issue:*</u>  The plaintiff is required to show she was qualified for a promotion. *Sprague v. Thorn Ams., Inc*. The job description for Equipment Operator II, which was used as a guideline, listed the equipment Starkie Cornett needed to learn

to operate. (PL. SOF ¶5) Starkie Cornett had received training on how to operate the dump truck, front-end loader, tractor and mower, maintenance of the mower, bulldozer, backhoe, lowboy belly dump, roller, trailers, snowplows, sanders, broom, excavator, and grader. (PL. SOF ¶6) The only piece of equipment she had not been trained on was the chip spreader. *Id.* Only four people in the Road & Bridge know how to use the chip spreader, regardless of pay grade and step. *Id.*

Starkie Cornett had learned and was proficient on all the equipment listed in the job description to be an Equipment Operator II when Kenny Marchant was hired. (Cooper Depo. 18:3 -20, PL. SOF ¶9) If any lack of proficiency existed, it was because Paco Jones purposely stifled her training, thus limiting her advancement. (Page 7 Sect. 4) Also, the males in the Road & Bridge hired or advanced over her also had to be trained on the equipment used by the Road & Bridge. (Page 8, Sect. 5)

Plaintiff has met her burden of proving she was qualified to do the work for the promotional position.

*Plaintiff performs work that was substantially the same as the rest of the Road & Bridge*: Plaintiff is required to prove that she was performing work that was substantially the same as the male counterparts in the Road & Bridge. *Sprague v. Thorn Ams., Inc*. The job descriptions for Operators (ECF 61-2, Ex. 18) lists typical duties performed in the position of Equipment Operator II. Plaintiff performed the duties of plowing and cleaning streets and roadways, monitoring flood and control channels, repairing potholes, repairing highways and shoulders of roads, cleaning out the chip spreader, hooking her truck up to the chip spreader, laying road cover and gravel. (PL. SOF ¶6)

The other employees in the shop believed Starkie Cornett performed the same job and duties as an Equipment Operator II. (PL. SOF ¶9) The only person claiming that Starkie Cornett was unable to perform the job of Operator II was Paco Jones. (Jones Depo 21:14 – 23:8)

Plaintiff was substantially doing the same work as Equipment Operator II in the Road & Bridge. It wasn't until after the complaint was filed that Starkie Cornett was promoted to level II.

<u>*Starkie Cornett was treated less favorably than others not in the protected class*</u>: Plaintiff is required to prove she was treated less favorably than her male counterparts. *Sprague v. Thorn Ams., Inc*. at 1362. Implementing the recommendations of Paco Jones, Brian Edwards did not advance Starkie Cornett when there was opportunity. (Page 8 Sect. 5, PL. SOF ¶10-11)

In contrast, recommendations were made to hire and advance males from inside and outside Road & Bridge into higher pay grades and steps than Starkie Cornett. ( *Id.*) They were hired to and did perform the same job Starkie Cornett was already doing. They were advantaged by being given more seat time in heavy equipment because of their gender. (*Id.,* Page 6 Sect. 2)

Starkie Cornett was denied the opportunity to work by herself for comp time like her male counterparts (Page 8-9, Sect. 6) No one denied that Paco Jones required Starkie Cornett to work alone during the work week, but he would not allow it on the weekends for comp time. *Id.*

Plaintiff has met the burden of proving she was treated less favorably than the males in the Road & Bridge.

> **(2)    Park County failed to meet its burden to show a legitimate, nondiscriminatory reason for the challenged action of discriminating against Starkie Cornett.**

Plaintiff has met her burden to prove the prima facie case under the Equal pay Act. The burden shifts to Park County, and they must clearly prove a legitimate reason for hiring and promoting males over Starkie Cornett for Equipment Operator II. *See, Allen v. Garden City Co-op, Inc.*

The Defendants claim that Brian Edwards made his advancement decisions solely on the basis of proficiency. And they argue that he was restricted to advance Starkie Cornett because of his budget. The evidence does not support either claim.

The male employees may have had experience operating other equipment prior to coming to the Road & Bridge. However, the equipment was not the same as what the Road & Bridge used, nor could they operate the equipment to the Road & Bridge standards to get the job done. (PL. SOF ¶ 40-41) Males hired required training to operate the equipment, just like Starkie Cornett. (*Id.*) Even Tim Morrison, who was supposed to be an Equipment Operator III was not proficient. (*Id.*) If someone ran a Kubota mower and small tractor for years or drove a sprayer for pesticides, it is not the same as using the specific equipment for the specific jobs the Road & Bridge requires.

None of the male employees hired to fill the open positions were tested on their skill level. (Jones ECF 161, Ex. 3, p. 20:13-16) However, Paco Jones required Starkie Cornett to be tested and examined on each piece of equipment she operated. (Cornett ECF 161-1, Ex. 8, p. 110:23 – 111:15) Kenny Marchant did not have extensive experience operating the same equipment the Road & Bridge used as the Defendant's claim. (PL. SOF ¶ 40-41) Arthur Briggs did not have the experience upon hire and required the training to be promoted to Equipment Operator II and III. (PL. SOF ¶ 8) He was hired at about the same time as Starkie Cornett. (ECF 161-3, Ex. 23) 13)

## C.    Plaintiff has satisfied her burden of Proof and shown that the Defendants' proffered reasons for her pay disparity is a pretext.

Once a Plaintiff has proven they belong to a protected class, they performed work that is substantially the same as their co-workers of the opposite sex in the same conditions; there was an opportunity for promotion, the Plaintiff was not promoted and treated less favorably than their male counterparts the burden shifts. *See, Allen v. Garden City Co-op, Inc.* The Defendant is required to clearly prove their affirmative defense. *Id.*

Plaintiff has demonstrated that she belongs to a protected class, she was qualified to operate the same equipment as her male coworkers, she substantially performed the same work in the same conditions, she was treated less favorably than her male coworkers, and that she was not advanced or promoted when the opportunity was available.

The Defendants offer the affirmative defense that male new hires had extensive experience. However, the evidence brought forth in the testimony demonstrated that is not true. They may have operated some equipment, but it was clear they needed to be trained on equipment Starkie Cornett already operated. Claims of budgetary constraints are not supported by the facts. Brian Edwards has great flexibility in hiring, advancing and promoting employees within his overall budget.

Defendant's affirmative defense are a pretext. Paco Jones intentionally held Plaintiff down because she was female. He believes that females should not operate heavy equipment.

## III.    CONCLUSION.

For the reasons stated above, the Court should deny Defendant's *Motion for Summary Judgment*. Plaintiff has shown a prima facie case of Defendant's discrimination resulting in the unfavorable treatment resulting in lower pay for Starkie Cornett. And she has demonstrated that the proffered excuses provided by the County are a pretext. There are genuine disputes as to material facts such that movants are not entitled to judgment as a matter of law.

**DATED** this 18^(TH) day of October, 20214

<div style="margin-left:40%">

Marshall E. Keller #7-6406
Keller Law Firm, P.C.
PO Box 111
116 N. 5th Street
Thermopolis, WY 82443
(307) 864-2318
marshall@kellerlawpc.com


 */s/  Philip A. Nicholas*
Philip A. Nicholas # 5-1785
P.O. Box 928
Laramie, Wyoming 82073
(307) 742-7140
Fax: (307) 742-7160
E-mail:  nicholas@wyolegal.com

</div>

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 18th day of October  2024, the foregoing pleading was electronically filed with the Clerk of the Court using the CM/ECF system.


    /s/ Philip A. Nicholas

Philip A. Nicholas